Erika Angelos Heath (SBN 304683)
FRANCIS MAILMAN SOUMILAS, P.C.
369 Pine Street, Suite 410
San Francisco, CA 94104
Tel:   (628) 246-1352
Fax:   (215) 940-8000
eheath@consumerlawfirm.com

James A. Francis*
John Soumilas*
Lauren KW Brennan*
Edward H. Skipton*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19110
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com
eskipton@consumerlawfirm.com

*Admitted *pro hac vice*

*Attorneys for Plaintiff
and the Settlement Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID EDWARD WATSON,<br><br>        *Plaintiff,*<br><br>v.<br><br>CHECKR, INC.,<br><br>        *Defendant.* | Case No.  3:19-CV-03396-EMC<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:        May 27, 2021<br>Time:        1:30 p.m.<br>Crtrm:      virtual<br>Judge:       Hon. Edward M. Chen |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................iiiii

**NOTICE OF MOTION AND MOTION** ....................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ........................................... 3

**I.**   **INTRODUCTION** ............................................................................................ 3

**II.**   **BACKGROUND** ................................................................................................ 4

   A.   The Continuous Check Arrest Record Product .................................... 4

   B.   The Experience of the Representative Plaintiff ..................................... 5

   C.   The Proposed Settlement Class ............................................................. 5

**III.**   **THE PROPOSED SETTLEMENT** ................................................................ 6

   A.   Class Certification. .............................................................................. 7

   B.   Class Representation. ........................................................................... 8

   C.   Relief to the Settlement Class. .............................................................. 8

      1.   Injunctive Relief. ........................................................................ 8

      2.   Monetary Relief. ......................................................................... 9

   D.   The Settlement Administrator. ............................................................ 10

   E.   Class Notice. ....................................................................................... 10

   F.   Class Members' Right to Opt Out and to Object. ............................... 11

   G.   Class Member Payments and *Cy Pres* Awards .................................. 11

   H.   Release. ............................................................................................... 11

   I.   Service Award and Attorney's Fees and Expenses.............................. 12

**IV.**   **LEGAL STANDARD** ..................................................................................... 13

**V.**   **THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND NOTICE SHOULD BE SENT TO THE CLASS** .......................................... 14

   A.   Class Representative and Class Counsel Have Adequately Represented the Class ......................................................................... 15

   B.   The Settlement Negotiations Were at Arm's Length ........................... 15

C.    The Relief Provided for the Class Is Adequate ............................................. 16

    1.    The Risks of Continued Litigation ....................................... 16

    2.    The Effectiveness of Proposed Method of Class Distribution .......... 18

    3.    Terms of Proposed Award of Attorneys' Fees ................................. 18

    4.    The Proposal Treats Class Members Equitably ............................... 19

VI.    THE SETTLEMENT CLASS SATISFIES RULE 23 ............................................. 20

A.    The Class Is Sufficiently Numerous ............................................................. 20

B.    There are Questions of Law and Fact That Are Common to the Class ............................................................................................................. 20

C.    Plaintiff's Claims Are Typical of the Proposed Class ................................. 21

D.    Plaintiff and His Counsel Will Adequately Represent the Class .................. 22

E.    The Class Meets the Requirements of Rule 23(b) ........................................ 23

    1.    Rule 23(b)(2) Is Satisfied ...................................................... 23

    2.    Rule 23(b)(3) Is Satisfied ...................................................... 23

VII.    CONCLUSION ....................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abbas v. Early Warning Services, LLC*,
No. 2:!5-cv-01976-DLR (D. Ariz.) .................................................................................. 9

*Adams v. Inter-Con Sec. Sys. Inc.*,
No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ................................ 16

*Alberto v. GMRI, Inc.*,
252 F.R.D. 652 (E.D. Cal. 2008) ..................................................................................... 14

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ......................................................................................................... 23

*Barel v. Bank of America*,
255 F.R.D. 393 (E.D. Pa. 2009) ...................................................................................... 22

*Beck-Ellman v. Kaz USA, Inc.*,
No. 10-cv-02134, 2013 WL 1748729 (S.D. Cal. Jan. 7, 2013) ....................................... 14

*Berry v. LexisNexis Risk & Information Analytics Group, Inc.*,
2014 WL 4403524 (E.D. Va. Sept. 5, 2014) .................................................................... 23

*Berry v. Schulman*,
807 F.3d 600 (4th Cir. 2015) .............................................................................. 12, 19, 23

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ........................................................................................... 21

*Bonett v. Education Debt Services, Inc.*,
2003 WL 21658267 (E.D. Pa. 2003) ............................................................................... 15

*Chakejian v. Equifax Info. Services, LLC*,
256 F.R.D. 492 (E.D. Pa. 2009) ...................................................................................... 15

*Churchill Village, LLC v. General Electric*,
361 F.3d 566 (9th Cir. 2004) ........................................................................................... 16

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) ..................................................................................... 20

*In re Employee Benefit Plans Secs. Litig.*,
1993 WL 330595 (D. Minn. June 2, 1993) ...................................................................... 16

*Giddiens v. First Advantage LNS Screening Solutions, Inc.*,
No. 2:12-cv-2624 (ECF 55) (E.D. Pa. Jan. 20, 2015) ..................................................... 15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................ 20, 21, 22

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ......................................................................21-22

*Hansen v. Ticket Track, Inc.*
213 F.R.D. 412 (W.D. Wash. 2003) .................................................................. 22

*Jones v. Midland Funding, LLC*,
No. 3:08-cv-802-RNC (ECF 82) (D. Conn. Oct. 13, 2009) ............................... 15

*Jordan v. Commonwealth Financial Systems, Inc.*,
237 F.R.D. 132 (E.D. Pa. 2006)........................................................................ 15

*LaRocque v. TRS Recovery Services, Inc.*,
285 F.R.D. 139 (D. Me. 2012)........................................................................... 15

*Leo v. AppFolio*,
No. 3:17-cv-05771-RJB (ECF 62) (W.D. Wash.) ............................................... 9

*Leo v. AppFolio*,
No. 3:17-cv-05771-RJB (ECF 61) (W.D. Wash.) ............................................. 17

*Leo v. AppFolio, Inc.*,
No. 3:17-cv-05771-RJB (ECF 66) (W.D. Wash.) ............................................. 21

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) ........................................................................... 22

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) .......................................................................... 14

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) .......................................................................... 24

*McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust*,
268 F.R.D. 670 (W.D. Wash. 2010) .................................................................. 20

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)....................................................................... 15

*In re Netflix Privacy Litig.*,
No. 5:11-cv-00379 EJD, 2012 WL 2598819 (N.D. Cal. July 5, 2012) ............... 16

*In re Omnivision Tech., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)..........................................................18-19

*Parra v. Bashas', Inc.*,
536 F.3d 975 (9th Cir. 2008) ........................................................................... 21

*Patel v. Trans Union, LLC,*
    308 F.R.D. 292 (N.D. Cal. 2015) ................................................................. 21, 24

*Patel v. Trans Union, LLC,*
    No. 3:14-cv-0522-LB (ECF 159) (N.D. Cal.) ................................................. 9, 17

*Patel v. Trans Union, LLC,*
    3:14-cv-00522-LB (ECF 159-1) (N.D. Cal.) ......................................................... 9

*Ramirez v. Trans Union, LLC,*
    301 F.R.D. 408 (N.D. Cal. 2014) ................................................................. 21, 24

*Rodriguez v. Hayes,*
    591 F.3d 1105 (9th Cir. 2010) .......................................................................... 23

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ............................................................................ 14

*Romero v. Producers Dairy Foods, Inc.,*
    235 F.R.D. 474 (E.D. Cal. 2006) ...................................................................... 24

*Safeco Insurance Co. of America v. Burr,*
    551 U.S. 47 (2007) ..................................................................................... 17, 18

*Sapp v. Experian Info. Solutions,*
    2013 WL 2130956 (E.D. Pa. May 15, 2013) .................................................... 15

*Serrano v. Sterling Testing Systems, Inc.,*
    711 F. Supp. 2d 402 (E.D. Pa. 2010) ............................................................... 15

*Summerfield v. Equifax Info. Services, LCC,*
    264 F.R.D. 133 (D. N.J. 2009) ......................................................................... 15

*In re Tableware Antitrust Litig.,*
    241 F.R.D. 644 (N.D. Cal. 2007) ..................................................................... 24

*In re Tableware Antitrust Litig.,*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 14

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ............................................................................ 14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994) ............................................................................ 18

*White v. Experian Info. Solutions,*
    993 F. Supp. 2d 1154 (C.D. Cal. 2014) ....................................................... 15, 23

*Wills v. Starbucks Corp.,*
    1:17-cv-03654-CAP (ECF 55) (N.D. Ga.) ........................................................ 10

1

### STATUTES & FEDERAL RULES

2

CAFA, 28 U.S.C. § 1711, *et seq.*............................................................................. 10

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x .................................. *passim*

    15 U.S.C. § 1681e(b) ..................................................................... *passim*

    15 U.S.C. § 1681i(a) ............................................................................. 3

    15 U.S.C. § 1681n................................................................................ 9, 17

    15 U.S.C. § 1681n(a)(1)(A) ................................................................... 17

    15 U.S.C. §§ 1681o............................................................................... 17

Fed. R. Civ. P. 23 ............................................................................... *passim*

    Fed. R. Civ. P. 23(a) ....................................................................... 1, 23

    Fed. R. Civ. P. 23(a)(2) .................................................................. 20, 21

    Fed. R. Civ. P. 23(a)(3) ........................................................................ 21

    Fed. R. Civ. P. 23(a)(4) ........................................................................ 22

    Fed. R. Civ. P. 23(b) ............................................................................ 23

    Fed. R. Civ. P. 23(b)(2) ................................................ 3, 4, 8, 12, 23

    Fed. R. Civ. P. 23(b)(3) ..................................................................... *passim*

    Fed. R. Civ. P. 23(c)(2) .......................................................................... 2

    Fed. R. Civ. P. 23(e) ............................................................................ 13

    Fed. R. Civ. P. 23(e)(1) .......................................................................... 2

    Fed. R. Civ. P. 23(e)(1)(A) ................................................................... 13

    Fed. R. Civ. P. 23(e)(1)(B) ........................................................ 4, 13, 14

    Fed. R. Civ. P. 23(e)(2) .............................................................. 4, 13, 14

    Fed. R. Civ. P. 23(e)(2)(C)(ii) ............................................................. 18

    Fed. R. Civ. P. 23(e)(3) ........................................................................ 13

### OTHER AUTHORITIES

Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002) ....... 13, 14, 15

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) ........................................................... 13, 14

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 27, 2021 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable Edward M. Chen, Plaintiff David Watson ("Plaintiff") on behalf of himself and the proposed Settlement Class will respectfully move this Court for preliminary approval of the settlement Plaintiff has reached with Defendant Checkr, Inc. ("Defendant" or "Checkr").  In particular, Plaintiff will move this Court:

1. To preliminarily approve the Settlement Agreement and Release of Claims (the "Settlement Agreement" or "Agreement") between Plaintiff and Defendant;

2. To certify under Fed. R. Civ. P. 23(a) & (b)(3), for settlement purposes only, two settlement class subgroups defined as follows:

     a. **The "Mismatch Subgroup":** all natural persons residing in the United States who:  (1) were subject to at least one Continuous Check arrest record report ("CC Arrest Report") from July 1, 2018 to the date that the Court enters its Preliminary Approval Order, where (2) Checkr's records for the CC Arrest Reports reflect that the name in the Checkr name field of the CC arrest report did not have the same characters as the characters in the vendor name field of the CC arrest report, and where (3) the four digit year of birth in the Checkr date of birth field of the CC arrest report did not have the same characters as a four digit year of birth in the vendor date of birth field of the CC arrest report.

     b. **The "Dispute Subgroup":** all natural persons residing in the United States who (1) were subject to at least one CC Arrest Report between July 1, 2018 to the date that the Court enters its Preliminary Approval Order, where (2) Checkr's records pertaining to disputes reasonably indicate that the consumer may have disputed with Checkr that the arrest record contained in the CC Arrest Report did not belong to them, and where (3) by the date that the Court enters its Preliminary

1        Approval Order, Checkr's records reflect that the consumer's dispute of the CC

2        Arrest Report resulted in a changed CC Arrest Report.

3  3.  To appoint the named Plaintiffs as Settlement Class Representatives and Plaintiffs'

4      attorneys as Settlement Class Counsel.

5  4.  To approve the proposed notices to be distributed to Class Members under Fed. R. Civ.

6      P. 23(c)(2) and (e)(1).

7  5.  To set a fairness hearing consistent with the schedule for class notice, objections, and

8      requests for exclusions, as set forth in this Motion

9        This motion is based on the accompanying Memorandum of Points and Authorities; the

10  Settlement Agreement and exhibits (including the Proposed Class Notices, attached as Exhibits

11  F and G); such other documents as may be submitted in support of this Motion; such oral

12  argument as may be heard by the Court; and all other papers on file in this action.

13

14  Dated:  April 19, 2021           Respectfully submitted,

15                   FRANCIS MAILMAN SOUMILAS P.C.

16                   By:  /s/  *John Soumilas*

17                      John Soumilas

18                   Attorneys for Plaintiff and the Class

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This class action lawsuit has been brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.  Defendant Checkr, Inc. ("Defendant" or "Checkr") is a consumer reporting agency ("CRA") regulated by the FCRA, and regularly prepares and sells consumer reports containing public record items, also known as background checks.

This case addresses certain practices with respect to a background check product Checkr began offering to Uber in or about July 2018, which sought to monitor individuals already working after passing a background check before starting to drive for Uber.  Through the product, Continuous Check Arrest Reports ("CC Arrest Reports") Checkr delivered subsequent reports when Checkr identified an arrest record it attributed to a particular individual.

Plaintiff's allegation is that the CC Arrest Report product relied upon incomplete data and inadequate matching logic, resulting in the sale of certain inaccurate reports that cause individuals such as Plaintiff to be immediately suspended from their jobs as Uber drivers. Plaintiff asserts that Checkr's procedures for preparing these CC Arrest Reports violate the FCRA's mandate that CRAs "follow reasonable procedures to assure maximum possible accuracy of the information" included on a report.  15 U.S.C. § 1681e(b).  Plaintiff Watson disputed the error on his report pursuant to 15 U.S.C. § 1681i(a), and Checkr corrected the same, but not before Plaintiff lost approximately one month of income as an Uber driver.  Plaintiff brought this case on behalf of himself and other similarly situated drivers, who were the subject of a CC Arrest Report prepared by Checkr for Uber which contained an inaccurate arrest record.

The parties have successfully negotiated in a single comprehensive Settlement Agreement what amounts to two separate class-wide forms of relief which addresses Plaintiff's claims in vital ways.  The overall Settlement Agreement provides for both (1) injunctive relief under Rule 23(b)(2) and separately (2) monetary relief under Rule 23(b)(3).  On balance the settlement in this matter, presented here for approval, is fair, reasonable and adequate.

First, with respect to the injunctive relief, Checkr has agreed to make important and

specific changes, enforced through a Consent Order entered by the Court, to its practices for attributing arrest records to consumers in connection with the CC Arrest Report product.  The practices changes were separately and vigorously negotiated, and are expected to correct errors *before the data is provided to Uber* such as that error which negatively impacted Plaintiff Watson and others.  There is a significant, tangible benefit in this Rule 23(b)(2) settlement alone, both for the settlement groups defined below and for Uber drivers in general.

Second, Class Members will be provided a significant monetary recovery under Rule 23(b)(3).  Those persons who were the subject of an inaccurate CC Arrest Report like Watson's will receive compensation within the FCRA's range of statutory damages of $100-$1,000, and likely *above* that range depending on the claim rate of one class, as discussed below. Most FCRA class action settlements under Rule 23(b)(3) are within the statute's statutory damages range.

Securing these benefits on a class-wide basis is particularly valuable in light of the parties' dispute regarding whether an arbitration clause prohibiting class resolution applies to Plaintiff's claim here, as well as disagreements regarding the merits and under Rule 23.

By this motion, Plaintiff respectfully requests that this Court preliminarily approve the Settlement Agreement by entering an Order: (1) finding that it will likely be able to approve the proposed settlement under Fed. R. Civ. P. 23(e)(2), as amended, and certify the proposed Settlement Class for purposes of judgment;   (2) approving the form, content, and method of delivering notice to the Class as set out in the Settlement Agreement, attached hereto as <u>Appendix I</u>, and the exhibits attached thereto; and (3) scheduling a final approval hearing.[1]

## II.    <u>BACKGROUND</u>
### A.  <u>The Continuous Check Arrest Record Product</u>

Checkr began offering its CC Arrest Report product in July 2018, advertising the product as a way for companies to stay informed of changes to a worker's background after they are

---

[1]  This motion reflects amendments to Fed. R. Civ. P. 23 which took effect on December 1, 2018. The amendments clarified the requirements for court review and approval of class action settlements.  Fed. R. Civ. P. 23(e)(1)(B).  Consistent with this District's procedural guidance for class action settlements, this motion continues to refer to this process as "preliminary approval" of the settlement.

hired.  CC Arrest Reports include, among other data, a "real-time" arrest record feed obtained from a vendor.  Uber subscribed to the CC Arrest Report product and provided Checkr with its roster of drivers about whom it wants to receive further background checks.  Checkr then passes on this information to its vendor, and the vendor reports to Checkr (who in turn reports to Uber) when the personal information of the employee purportedly matches an arrest record.

Based upon his pre-suit investigation and upon the significant exchange of information and discovery, Plaintiff contends that the real-time arrest data Checkr obtains from its vendor can in certain instances be incomplete, omitting middle names, social security numbers, and month and day of birth.  Additionally, Plaintiff contends that the matching logic that permits a "match" between a consumer to an arrest record can lead to a mismatch between one or even two available identifiers.

**B.  <u>The Experience of the Representative Plaintiff</u>**

Plaintiff David Watson applied to drive for Uber in March 2018.  He satisfied all of Uber's screening requirements and began to drive for Uber in March 2018.   On or about November 28, 2018, Checkr prepared a CC Arrest Report about Plaintiff and delivered it to Uber. The November 28, 2018 Checkr report showed an arrest and charge for "POSSESSION OF CONTROLLED SUBSTANCE" in Madison County, Illinois, far from Mr. Watson's home in Wichita, Kansas.  The report listed the name of the arrested person as "DAVID EARL WATSON" and listed a year of birth of 1958.  Plaintiff's year of birth is 1978, and he has never had a middle name of or gone by the name "Earl."  The date of the reported arrest was November 28, 2018, the same as the date of the report.  The resulting report was a mismatch.

As a result, Uber immediately suspended Plaintiff's account, and he was unable to conduct any work for Uber.  Plaintiff disputed the inaccurate report with Checkr, and Checkr corrected the report by removing the arrest record, but not before Plaintiff lost approximately one month of income.  The typical dispute-correction process under the FCRA can take up to 30 days.

**C.  <u>The Proposed Settlement Class</u>**

The parties have agreed to settle the claims of individuals who were similarly situated to

Plaintiff – those about whom Checkr prepared a CC Arrest Report that contained a real-time arrest record that pertained to a different person.   Discovery has identified two groups of individuals who are highly likely to meet that definition.

First, discovery has identified 237 individuals who, like Plaintiff, disputed the appearance of an arrest record on a CC Arrest Report, and Checkr removed the record as a result of its investigation.   These individuals make up the "Dispute Subgroup" of the proposed Settlement Class.

Second, discovery has identified 712 individuals about whom Checkr included an arrest record on a Continuous Check report, where, as with the report about Plaintiff, there was a mismatch of two different items of personal identifying information – specifically, neither the name nor the year of birth was a character-for-character match. These individuals make up the "Mismatch Subgroup" of the proposed Settlement Class.

## III.    THE PROPOSED SETTLEMENT

The parties reached the proposed overall settlement after more than two full days of mediation with the assistance of an experienced JAMS mediator, Hon. Diane M. Welsh (Ret.). *See,* https://www.jamsadr.com/welsh/.  Before the mediation, the parties engaged in an extensive exchange of information regarding relevant facts, including regarding the Continuous Check product's functionalities, the role of the vendor Checker uses for the arrest data at issue, available data about groups of Uber drivers who ended up comprising the settlement groups here, Uber driver income data, and facts regarding Plaintiff's specific circumstances.

The mediations took place on June 17, 2020, and August 27, 2020.  Despite the parties' best efforts, no resolution was reached during either session.  However, the parties continued to exchange information and continued to negotiate towards a resolution with the assistance of Judge Welsh, and a settlement in principle was reached in late September 2020 at the recommendation of Judge Welsh.   The settlement was conditioned upon the completion of confirmatory discovery regarding Checkr's procedures and the composition of the proposed Settlement Class, which was completed during the subsequent months.  During that time the

parties continued to negotiate the specific terms of the settlement and drafted the Settlement Agreement and notices to Class Members. The final comprehensive Agreement was executed on April 19, 2021.

Thus, the parties reached a comprehensive deal only after reviewing and analyzing the legal and factual issues presented in this action, the risks and expenses involved in pursuing the litigation to conclusion, including the threat of Checkr's arbitration provision and class action ban, the likelihood of a damage award negotiated in the settlement, the protracted nature of the litigation, and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals.  The parties negotiated the Agreement in good faith and at arm's length, both during and subsequent to the mediation.

The key terms of the Agreement are as follows:

**A. <u>Class Certification.</u>**

The parties have stipulated to certification of a Settlement Class, pursuant to Federal Rule of Civil Procedure 23 for settlement purposes, consisting of:

The "Mismatch Subgroup," defined in the Settlement Agreement as follows:
All natural persons residing in the United States who:  (1) were subject to at least one Continuous Check arrest record report ("CC Arrest Report") from July 1, 2018 to the date that the Court enters its Preliminary Approval Order, where (2) Checkr's records for the CC Arrest Reports reflect that the name in the Checkr name field of the CC arrest report did not have the same characters as the characters in the vendor name field of the CC arrest report, and where (3) the four digit year of birth in the Checkr date of birth field of the CC arrest report did not have the same characters as a four digit year of birth in the vendor date of birth field of the CC arrest report.

*See* Agreement, ¶ 2.2(b).[2]

And also the "Dispute Subgroup," defined in the Settlement Agreement as follows:
all natural persons residing in the United States who (1) were subject to at least one CC Arrest Report between July 1, 2018 to the date that the Court enters its Preliminary Approval Order, where (2) Checkr's records pertaining to disputes reasonably indicate that the consumer may have disputed with

---

[2]    This is substantively the same class as plead in the Complaint, ECF 1 at ¶ 37(a). The difference in the time period reflects the fact that Checkr launched the CC Arrest Report product on July 1, 2018.  Furthermore, the criteria was changed from "any personal identifying information" to name and year of birth to reflect available data about both Plaintiff and other individuals.

Checkr that the arrest record contained in the CC Arrest Report did not belong to them, and where (3) by the date that the Court enters its Preliminary Approval Order, Checkr's records reflect that the consumer's dispute of the CC Arrest Report resulted in a changed CC Arrest Report.

*See* Agreement, ¶ 2.2(c).[3] Class Members will be counted only once for purposes of the settlement – individuals such as Plaintiff who meet both definitions shall be considered members of the Dispute Subgroup. *Id.*, at ¶ 2.2(a).

**B.** **Class Representation.**

The parties have further agreed, subject to court approval, that Plaintiff will be the Class Representative, and that Plaintiff's attorneys, Francis Mailman Soumilas, P.C., will be Class Counsel. *Id.*, ¶¶ 1.4, 1.14.

**C.** **Relief to the Settlement Class.**

**1.** **Injunctive Relief.**

Defendant has agreed to the entry of consent order requiring that, as a final step in its quality control procedures with respect to CC Arrest Reports, a Checkr employee who has been trained in the FCRA's accuracy requirements manually review the report to ensure that there is no mismatch between the personal identifying information provided to Checkr and any of the identifiers provided by any vendor Checkr uses to obtain arrest record information. *See* Agreement, Exhibit C (Proposed Consent Order). In the event the manual review reveals a mismatch with any item of personal identifying information, the injunctive relief order prohibits Checkr from including the arrest record on the report without taking appropriate additional steps to confirm that the record pertains to the consumer before providing the report to the third party, such as contacting the underlying source of the information to obtain additional information. *Id.* Further, Defendant has agreed to pay Plaintiff's counsel fees for this Rule 23(b)(2) relief, which is estimated to be $125,000 on a lodestar basis – expected to be approximately half of counsel's overall lodestar in this matter. Agreement, ¶ 2.4.

---

[3] This is the same class as plead in the Complaint, ECF 1 at ¶ 37(b), with the same time period adjustment reference in fn. 2 above.

### 2. Monetary Relief.

Defendant will pay a further amount of $670,000 (for a total cash outlay by Defendant of $795,000) to fund the costs of notice and administration of the settlement, to pay an individual settlement and service award of $10,000 to the Class Representative, and to pay the remaining attorneys' fees and expenses for this Rule 23(b)(3) relief (estimated at approximately $134,000, and capped at no more than 25% of the Rule 23(b)(3) fund).  Agreement, ¶ 2.4.

Payments to Class Members will be made on a *pro rata* basis. Members of the Dispute Subgroup whose notices are not returned as undeliverable and who do not opt out will receive a payment without the need to make a claim.  Members of the Mismatch Subgroup can receive a *pro rata* payment by submitting a timely, complete and valid Claim Form affirming that the CC Arrest Report prepared about them was inaccurate.  These *pro rata* payments to Class Members will be made from the approximate $670,000 fund designated for Rule 23(b)(3) Class Member monetary relief and other expenses per the terms of the Agreement. Agreement, ¶ 2.4.

Class Counsel expects the claims rate to be approximately 10-20% based upon prior similar cases.[4]  Thus, payments to Class Members are expected to be with the FCRA statutory range of $100-$1,000, 15 U.S.C. § 1681n, and can likely be in excess of $1,100, and potentially as much as $1,500 per Class Member.

Given the risks associated with Defendant's pending motion to compel arbitration, and with pressing the claims in the case through trial, Class Counsel with the assistance of Judge Welsh determined that the settlement is fair, reasonable, and adequate for the Class because the injunctive relief will benefit the Class as well as future applicants, and Class Members will have

---

[4] *See Patel v. Trans Union, LLC*, 3:14-cv-00522-LB (N.D. Cal.) at ECF 159-1 (declaration of administrator in 2018 settlement of FCRA claims documenting 9% claims rate out of approximately 10,000 potential claimants); *Abbas v. Early Warning Services, LLC*, No. 2:15-cv-01976-DLR (D. Ariz.) at ECF 50-1 (declaration of administrator in 2017 settlement of FCRA section 1681e(b) claim documenting 19% claims rate out of 83 potential claimants); *Leo v. AppFolio*, No. 3:17-cv-05771-RJB (W.D. Wash.) at ECF 61 (declaration of administrator in 2019 settlement of FCRA section 1681e(b) claim with similar structure, showing 1.3% claims rate out of over 250,000 potential claimants).  *See also* Appendix II (summary chart of *Patel, Abbas,* and *Leo* settlements)

the opportunity to receive a substantial monetary payment, some without the need to take any action.

**D. The Settlement Administrator.**

Class Counsel have retained the services of JND, a professional third-party class action settlement administrator.  JND will administer the class notice, claims process, and payments from the Net Settlement Fund.   Class Counsel selected JND after soliciting and reviewing two different estimates for notice and administration in this matter, and selected the proposal with the lower cost, which is not expected to exceed $29,000. *See* Agreement at 2.4.1(a)(3).    Class Counsel have not previously engaged JND directly, in connection with administration of a settlement but have worked with them on one previous document management project unrelated to a settlement, and JND was selected as the administrator by a defendant in another class settlement where Class Counsel represented the settlement class.  *See Wills v. Starbucks Corp.*, 1:17-cv-03654-CAP (N.D. Ga.) at ECF 55 p. 5 & n.1.  Although the class size here is relatively small, many of the costs of notice and administration, such as establishing a website and providing notice pursuant to CAFA, 28 U.S.C. § 1711, *et seq*., are fixed costs.  Additionally, the substantial payments provided here will require additional tax reporting activities.    In Class Counsel's experience and judgment, the costs of notice here are justified in light of the substantial benefits provided in the settlement.

**E. Class Notice.**

Within twenty-five days of the Court's Order granting preliminary approval of the Settlement, the Settlement Administrator will provide notice to the Class by sending an appropriate Notice of Proposed Class Action Settlement and Hearing by electronic mail to the Class Member at the email address available from the records of the Defendant, or via first class mail if no email address is available.  *Id*., ¶¶ 4.2, 4.3.  The notice to the Dispute Subgroup Settlement Class Members (attached as Exhibit G to the Agreement) will notify them of their right to object or opt out of the Settlement and their right to a Class Member Payment.  The notice to the Mismatch Subgroup Settlement Class Members (attached as Exhibit F to the Agreement)

will notify them of their right to object, opt out, or submit a claim in order to receive a Class Member Payment.  Both notices will include a brief description of the non-monetary injunctive relief that all Settlement Class Members will obtain as a result of the Agreement.

**F.  <u>Class Members' Right to Opt Out and to Object.</u>**

Any member of the Class may request to be excluded from the Agreement and the settlement by opting out of the Class within sixty days from the date of the Notice, and any member of the Class may file an objection to the settlement within the same time frame.  *Id.*, ¶ 4.4, 4.8, 4.9.  Any member who timely opts out of the Class shall not be bound by any prior Court order or the terms of the Agreement and shall not be entitled to any of the monetary benefits set forth in the Agreement.  *Id.*, ¶ 4.8.

**G.  <u>Class Member Payments and *Cy Pres* Awards</u>**

After the Settlement becomes final and any appeals have been disposed of, the Claims Administrator shall distribute the settlement funds to Settlement Class Members, pay all Court approved attorneys' fees, costs, and expenses to Class Counsel, and pay the Court-approved Service Award to the Class Representative.  No unclaimed funds will revert back to Defendant, and instead will be distributed to Bay Area Legal Aid as *cy pres* beneficiary, subject to this Court's approval.  Agreement, ¶ 2.4.4.

**H.  <u>Release.</u>**

In consideration of the relief provided by the settlement, as detailed in the Agreement, the Class will release all claims that arise out of or relate to the facts alleged or which could have been alleged or asserted in the action under the FCRA.  Agreement, ¶ 3.1.  The release is broader than the section 1681e(b) claim plead in the Complaint in recognition of the substantial monetary relief available, which will likely be greater than the maximum statutory damages prescribed in the FCRA as well as the substantial risk associated with the possibility of no class at all, given the arbitration provision at issue here.  Furthermore, the facts developed in confirmatory discovery indicate that Class Members are unlikely to possess other FCRA claims against Checkr.  The release specifically excludes employers and other users of the Continuous Check

1   product, preserving all Class Members' ability to make claims against such users for any

2   improper use of the reports at issue.  *Id.*, ¶ 1.24,

3   **I.  Service Award and Attorney's Fees and Expenses.**

4           The Agreement provides that Plaintiff may apply for an individual settlement and service

5   award of $10,000 for serving as the Class Representative, and in exchange for the full general

6   release he provides, which is broader than the class release.  *Id.* ¶¶ 3.2, 7.2.   As noted above,

7   Class Counsel may apply for an award of $125,000 in attorneys' fees calculated on a lodestar

8   basis in conjunction with their work in obtaining the injunctive relief component of the settlement

9   under Rule 23(b)(2)  (*Id.* ¶ 2.4.1(a)), as well as no more than 25% of the Net Settlement Amount,

10  expected to be approximately $134,000, in conjunction with Class Counsel's work in obtaining

11  the monetary components of the settlement under Rule 23(b)(3).  *Id.* at ¶ 2.4.1(b)(4).   This hybrid

12  approach to attorneys' fees is appropriate given the dual benefits achieved by the settlement, and

13  has been approved over objections in the FCRA class action settlement context.  *Berry v.*

14  *Schulman*, 807 F.3d 600, 618 n.10 (4th Cir. 2015).  Furthermore, as Plaintiff will show in his fee

15  petition, the total fee request is reasonable in light of the lodestar Class Counsel have incurred

16  and are expected to incur through final judgment in order to achieve this successful settlement

17  here. Finally, as will also be discussed further in the fee petition, the injunction will provide

18  substantial financial and other benefits to Class Members (who will continue to be subject to

19  future possible Continuous Check reports while they remain employed by Uber), as well as

20  numerous other consumers.

21          Class Counsel will submit an application for the individual settlement and service award

22  and for attorneys' fees, costs and expenses of the litigation at least ten (10) days prior to the

23  deadline for Class Members to submit objections to the settlement, detailing their lodestar and

24  expenses, and providing further support for the reasonableness of both requested awards.  A copy

25  of the application shall be made available to Class Members on the settlement website.

26

27

28

## IV.  <u>LEGAL STANDARD</u>

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class settlement may be approved if the settlement is "fair, reasonable, and adequate." Under the recent amendments to Rule 23, the first step in the process is a preliminary fairness determination.  Specifically, counsel submit the proposed terms of settlement to the district court, along with "information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A) (2018). This is so that the Court may make "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms[.]" MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); *see also* Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.25 (4th ed. 2002) ("NEWBERG").

The new Rule calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. The new Fed. R. Civ. P. 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed

settlement, and date of the final fairness hearing." MANUAL FOR COMPLEX LITIGATION, § 21.632; Fed. R. Civ. P. 23(e)(1)(B). The second step in the process is a final fairness hearing. Fed. R. Civ. P. 23(e)(2).

As explained below, consideration of these factors supports preliminarily approving the Settlement, conditionally certifying the Settlement Class, and issuing notice.

## V.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND NOTICE SHOULD BE SENT TO THE CLASS

The Ninth Circuit has a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992)); *see also* NEWBERG, § 11.41 ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise."). There is an "overriding public interest in settling and quieting litigation," *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976), and the Ninth Circuit "has long deferred to the private consensual decision of the parties" to settle, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) *vacated on other grounds* 688 F.3d 645.

Where, as here, the parties propose to resolve the claims of a class through settlement, they must obtain the court's approval. *See* Fed. R. Civ. P. 23(e)(2).  Plaintiff asks that the Court enter an Order preliminarily approving the parties' settlement and directing notice to the Class.

At this stage, the Court "must make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms and must direct preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." MANUAL FOR COMPLEX LITIGATION, § 21.632.  Courts should grant preliminary approval and direct notice to the class if the settlement has no obvious deficiencies and "falls within the range of possible judicial approval." *Beck-Ellman v. Kaz USA, Inc.,* No. 10-cv-02134, 2013 WL 1748729, at *5 (S.D. Cal. Jan. 7, 2013); *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 666 (E.D. Cal. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); NEWBERG, *supra*, § 11.25.

**A.   Class Representative and Class Counsel Have Adequately Represented the Class**

Before engaging in settlement negotiations, Class Counsel undertook considerable factual investigation regarding class certification, liability, and damages.   Class Counsel reviewed documents produced in discovery and undertook a significant amount of confirmatory discovery regarding the product at issue and its application to consumers, including through taking detailed, written testimony after a settlement in principle was reached.   Counsel analyzed all this information in light of relevant rulings by federal District Courts within California, and by the Ninth Circuit.   Accordingly, Class Counsel made informed decisions when negotiating the proposed settlement.

In negotiating the proposed settlement, Plaintiff had the benefit of highly skilled and experienced counsel.   Class Counsel have broad experience litigating and trying consumer and class action cases on behalf of plaintiffs.[5]   In their view, the settlement provides substantial benefits to the Class, especially when one considers the attendant expense, risks, delays, and uncertainties of litigation, trial and post-trial proceedings.

**B.   The Settlement Negotiations Were at Arm's Length**

Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval." NEWBERG, *supra*, §11.41; *see also Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (great weight given to the recommendation of counsel who are the

---

[5]   *See Ramirez v. Trans Union, LLC*, No. 3:12-cv-632 (N.D. Cal.); *White v. Experian Info. Solutions*, 993 F. Supp. 2d 1154, 1169, 1172 (C.D. Cal. 2014) (finding Francis Mailman Soumilas (formerly Francis & Mailman) "FCRA specialists" and appointing firm and its team as interim class counsel over objections from competing group because their team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation."), *aff'd sub nom. Radcliffe v. Experian Info. Solutions, Inc.*, 818 F.3d 537, 548 (9th Cir. 2016); *Sapp v. Experian Info. Solutions*, No. 10-4312, 2013 WL 2130956 (E.D. Pa. May 15, 2013); *LaRocque v. TRS Recovery Services, Inc.*, 285 F.R.D. 139 (D. Me. 2012) (certifying firm of Francis Mailman Soumilas as class counsel in consumer class action); *accord, Giddiens v. First Advantage LNS Screening Solutions, Inc.*, No. 2:12-cv-2624 (ECF 55) (E.D. Pa. Jan. 20, 2015) (order granting final approval and certifying Francis Mailman Soumilas as class counsel); *Serrano v. Sterling Testing Systems, Inc.*, 711 F. Supp. 2d 402, 412 (E.D. Pa. 2010); *Summerfield v. Equifax Info. Services, LCC*, 264 F.R.D. 133 (D. N.J. 2009); *Chakejian v. Equifax Info. Services, LLC*, 256 F.R.D. 492 (E.D. Pa. 2009); *Jones v. Midland Funding, LLC,* No. 3:08-cv-802-RNC (ECF 82) (D. Conn. Oct. 13, 2009); *Jordan v. Commonwealth Financial Systems, Inc.,* 237 F.R.D. 132 (E.D. Pa. 2006); *Bonett v. Education Debt Services, Inc.*, No. 01-6528, 2003 WL 21658267, at *3 (E.D. Pa. 2003).

most closely acquainted with the facts of the litigation); *In re Employee Benefit Plans Secs. Litig.*, No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) (same).

There is no doubt that the proposed settlement was reached through arm's length bargaining. With sufficient information to make the process meaningful, the Parties engaged in two formal, day-long, mediations before a well-respected mediator, armed with sufficient discovery and well-researched and thought-out assessments of the likelihood of success of their respective claims and defenses. Though the parties were at an impasse at the conclusion of each mediation, the parties continued to negotiate towards a resolution, which was reached almost three months after the conclusion of the second formal mediation session, which resulted in a written term sheet and ultimately resulting in the formal settlement agreement that is attached hereto as Appendix I.

Additionally, the fact that the settlement process and the progress made at that session was overseen by an experienced mediator indicates the settlement was anything but collusive. *See, e.g., Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007); *see also In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2012 WL 2598819, at *1, 2 (N.D. Cal. July 5, 2012).

**C.   The Relief Provided for the Class Is Adequate**

   **1.   The Risks of Continued Litigation**

The Settlement provides all of the significant benefits described above to the Class without the risks, costs, and delays inherent in continued litigation, trial, and possible appeal of Plaintiff's claims. The expense, complexity, and duration of litigation are important factors considered in evaluating the reasonableness of a settlement. *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004). Litigating this class action through trial would be time-consuming and expensive. As with most class actions, the claims at issue are complex and risky.

The largest risk posed to class recovery in this matter is Defendant's pending motion to compel arbitration. ECF 39. If the arbitration provision is found to apply, no class recovery

would be possible because the provision contains a class action waiver.  ECF 39-1.  Although Plaintiff believes there are strong arguments against application of the arbitration provision, the motion presents substantial risk.  Even if Plaintiff successfully kept the claims in this Court, and passed the liability hurdle, a battle would likely ensue concerning whether Plaintiff and other Class Members have sustained damages and, if so, the proper measure of those damages, requiring yet more expert testimony and entailing further risks to Plaintiff's and the Class's chances of recovery.  Although Plaintiff is, and remains, confident in the strength of his case, and is prepared to litigate it through trial at all times, the risks are numerous and real.  The battles would be fought not only at trial but also on appeal.

By contrast, the settlement provides significant cash benefits to the Class in the form of FCRA damages.  Under the FCRA, a prevailing plaintiff in a class action may obtain, *inter alia*, actual damages or between $100 and $1,000 in statutory damages for each member of a class. 15 U.S.C. § 1681n(a)(1)(A).  At this stage of litigation, a likely recovery of over $1,000 for Settlement Class Members whose CC Arrest Reports are confirmed to be inaccurate through a dispute or successful claim represents a substantial benefit.  Such an award is likely to be in excess of the maximum statutory range, and compares highly favorably to other cases addressing violations of FCRA section 1681e(b).  *See, e.g. Patel v. Trans Union, LLC*, No. 3:14-cv-0522-LB (N.D. Cal.) at ECF 159 p. 6 ($1,100 payments for successful claimants); *Leo v. AppFolio, Inc,* No. 3:17-cv-05771-RJB (W.D. Wash.) at ECF 62 p. 7 ($425 for successful claimants).

While Plaintiff's counsel firmly believes in the merits of the Class's claims, demonstrating liability is not at all a certainty.  Liability under the FCRA is not strict and only arises upon a finding of negligence or willful failure to comply. 15 U.S.C. §§ 1681n and 1681o. Defendant contests liability in all regards.  Further, unless there is a finding of willful noncompliance,[6] Plaintiff (and thus the Class) must establish actual damages.  Consequently,

---

[6]  In *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69 (2007), the Supreme Court considered the standard for whether a defendant "willfully" violates the FCRA, including whether willfulness also includes "recklessness." *Id.* at 52. While it held that the former encompassed the latter, the Court also concluded that this willfulness standard is not met "unless the action is not only a violation [of the FCRA]

absent approval of the Settlement, Plaintiff will be put to challenging proofs, including as to issues of willfulness, and all Parties face the prospect of a long and expensive litigation which will likely culminate in a trial on a class-wide basis and, thereafter, a lengthy appeal.

### 2. The Effectiveness of Proposed Method of Class Distribution

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii).

This settlement provides for a cash payment to Class Members for whom it is confirmed that CC Arrest Report was inaccurate, in one of two possible forms. For Class Members of the Dispute Subgroup, the inaccuracy of the report was confirmed by Checkr's removal of the arrest record from the report after the Class Member's dispute. For members of the Mismatch Subgroup, in addition to the evidence from Checkr's records that there was a mismatch in two items of personal identifying information between the Class Member and the arrest record, each Class Member will affirm through submission the Claim Form that the reported arrest record did not pertain or belong to them. Once inaccuracy is established as set forth in the Agreement, Class Members will be treated equally for purposes of distribution – all Class Member payments will be in an equal *pro rata* amount.

The methodology for class distribution of funds to Class Members is simple, straightforward and will be effective in ensuring payment to the Settlement Class.

### 3. <u>Terms of Proposed Award of Attorneys' Fees</u>

District courts have the discretion to award attorneys' fees based on a percentage of the common fund or based on the lodestar method. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994). Additionally, attorneys may recover their reasonable litigation expenses from a common fund. *See In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036,

---

under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. To overcome this hurdle, it is the plaintiff's burden to prove that a defendant's attempts to comply with the FCRA were "objectively unreasonable." *Id.*

1042 (N.D. Cal. 2008).  Here, Class Counsel will apply to the Court for an award of attorneys' fees and expenses at least ten (10) days prior to the deadline for Class Members to object to the Settlement, setting forth in detail their basis for the fees and expenses sought.  Class Members will have sufficient time to review the fee request, which will be published on the settlement website.  Counsel's lodestar through the time of final judgment is expected to be at or above the fees requested here.  The percentage of the Rule 23(b)(3) common fund sought as fees and costs combined will not exceed the Ninth Circuit benchmark of 25% for fees alone.  The model of dividing fees between injunctive and monetary relief has also been approved before in FCRA class litigation. *See Berry v. Schulman*, 807 F.3d 600, 618 n.10 (4th Cir. 2015).  In sum, the fees and litigation expenses sought are reasonable.

### 4.  The Proposal Treats Class Members Equitably

The Agreement provides meaningful relief to the Settlement Class and treats all Class Members equitably relative to each other.  All Settlement Class Members will benefit from implementation of the practice changes provided by the injunctive relief provision of the Settlement Agreement.

Under the Agreement, all Class Members will receive an equal Class Member Payment on a *pro rata* basis, upon confirmation that the CC Arrest Report sold about them was inaccurate. Furthermore, this confirmation comes in the form of both affirmative action by the consumer and evidence from Checkr's records, for Class Members in both subgroups.  For members of the Dispute Subgroup, the Class Member took affirmative action to notify Checkr of the inaccuracy by disputing, and Checkr's records confirm the inaccuracy by removing the arrest record after a reinvestigation.  For members of the Mismatch Subgroup, Checkr's records show a potential inaccuracy because two items of personal identifying information on the arrest record do not match character for character to the individual's identifying information, and the Class Member must take affirmative action to confirm the inaccuracy by submitting a Claim Form. Furthermore, all Class Members will provide the same release of claims, which does not favor or disfavor certain groups of Class Members over others.

The proposed settlement falls within "a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 323 (N.D. Ga. 1993); *see also id.* at 326 (A court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation."). Indeed, "it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Id.* (internal citation omitted).

## VI.     THE SETTLEMENT CLASS SATISFIES RULE 23

### A.   The Class Is Sufficiently Numerous

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)).  Classes with as few as twenty-seven members have been found to be sufficient to meet the numerosity requirement." *McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673-74 (W.D. Wash. 2010) (collecting cases).

Between July 2018, when Checkr launched the Continuous Check product, and March 8, 2021, Defendant sold CC Arrest Reports about 237 individuals meeting the definition of the Dispute Subgroup, and 712 CC Arrest Reports meeting the definition of the Mismatch Subgroup. Together, they make up the Settlement Class of approximately 949, which is sufficiently numerous for certification purposes.[7]

### B.   There are Questions of Law and Fact That Are Common to the Class

Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law or fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class

---

[7]     To the extent any individual meets the definition of both the Dispute Subgroup and the Mismatch Subgroup, that Class Member will be treated as a member of the Dispute Subgroup and will not be required to submit a Claim Form in order to recover.  Agreement at ¶ 2.2(a). The extent of any overlap between the subgroups is not currently know, but even if it were complete, the Settlement Class would still be numerous of purposes of Rule 23.

predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975).

Rule 23 contains two related commonality provisions: Rule 23(a)(2) and Rule 23(b)(3). Rule 23(a)(2) requires that there be "questions of law or fact common to the class," but class certification is not precluded if fewer than all questions of law or fact are common to the class:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon,* 150 F.3d at 1019. "Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.,* 536 F.3d 975, 978-79 (9th Cir. 2008).

Courts in this Circuit have regularly recognized the existence of commonality in class actions asserting violations of the FCRA's accuracy requirement, both on contest and in the settlement context. *See Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 417-419 (N.D. Cal. 2014) (finding that FCRA section 1681e(b) claim presented common questions, and certifying class); *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 304-05 (N.D. Cal. 2015) (same); *see also Leo v. AppFolio, Inc.*, No. 3:17-cv-05771-RJB (W.D. Wash.) at ECF 66. (final approval order certifying settlement class).

Here, all members of the proposed Settlement Class were subjected to Checkr's standardized procedures for including arrest record information on CC Arrest Reports.

## C.   Plaintiff's Claims Are Typical of the Proposed Class

The typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The typicality test asks "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

Cir. 1992) (citation omitted).

Plaintiff Watson's claims are typical of those of the Class.  Like all other Class Members, Checkr prepared a CC Arrest Report about Watson using its procedures for attributing arrest record information to individuals.  Like all members of the Mismatch Subgroup, two items of personal identifying information on the arrest record did not match Watson's personal identifiers – for Watson, year of birth and middle name did not match.  And like all members of the Dispute Subgroup, Plaintiff disputed the accuracy of the report to Checkr, which subsequently removed the arrest record.  Thus, the typicality requirement is satisfied.

**D.  <u>Plaintiff and His Counsel Will Adequately Represent the Class</u>**

Rule 23(a)(4) requires that class representatives, the named plaintiff and his or her counsel, must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Legal adequacy is satisfied if: (1) if there are no antagonistic or conflicting interests between the named plaintiffs and their counsel, and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class."  *Hansen v. Ticket Track, Inc.* 213 F.R.D. 412, 415 (W.D. Wash. 2003) (citing *Hanlon*, 150 F.3d at 1020); *see also, Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978).

Plaintiff is familiar with the facts underlying this case and has actively participated in the prosecution of the case and he understands his obligation to represent the class.  There is no indication that Mr. Watson has any conflict with any class member.

Plaintiff has secured representation by counsel with significant experience in this type of litigation.  Plaintiff is represented by Francis Mailman Soumilas, P.C., which has been found to be well-qualified to represent consumer classes by courts in many other districts and has been certified as class counsel on over thirty occasions.  *See, e.g., Barel v. Bank of America*, 255 F.R.D. 393, 398-99 (E.D. Pa. 2009) (finding Francis Mailman Soumilas, P.C. "to be competent, experienced and well-qualified to prosecute class actions" and noting that class counsel "have done an excellent job in representing the class in the instant litigation.").  The firm has been appointed class counsel over objection and competing counsel's challenge in interim

appointment litigation. *See, e.g., White*, 993 F. Supp. 2d at 1169, 1175, 1178 (C.D. Cal. May 1, 2014) (finding Francis Mailman Soumilas, P.C. "FCRA specialists" and appointing firm and its team as interim class counsel over objections from competing group because their team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation."); *Berry v. LexisNexis Risk & Information Analytics Group, Inc.*, No. 3:11-cv-754, 2014 WL 4403524, at *11 (E.D. Va. Sept. 5, 2014) (finding Francis Mailman Soumilas, P.C. and its team adequate class counsel in contested settlement appeal).

Accordingly, Plaintiff and his counsel will adequately protect the interests of the class.

### E.  The Class Meets the Requirements of Rule 23(b)

After satisfying the requirements of Rule 23(a), a plaintiff must also show that at least one of the three requirements of Rule 23(b) is satisfied before the court can certify the class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997). The proposed settlement meets both the requirements of Rule 23(b)(2) and Rule 23(b)(3), making certification appropriate both with respect to the injunctive relief and the monetary recovery secured for Class Members.

### 1.  Rule 23(b)(2) Is Satisfied

Certification of a class is appropriate under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Where a defendant has acted uniformly with respect to class members, certification of a Rule 23(b)(2) settlement class is appropriate. *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010); *Berry v. Schulman*, 807 F.3d 600, 609-10 (4th Cir 2015) (certifying FCRA settlement). Plaintiff alleges that Checkr used the same standardized procedures to create the CC Arrest Report about him and all other Class Members, making the negotiated injunctive relief to improve those procedures an appropriate remedy for the Settlement Class as a whole.

### 2.  Rule 23(b)(3) Is Satisfied

Pursuant to Rule 23(b)(3), the court must find that the questions of law or fact common to the class predominate over any questions affecting only individual class members, and that a

class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The matters pertinent to a finding under Rule 23(b)(3) include: (a) the interest of class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. *Id.*

The objective behind the two requirements of Rule 23(b)(3) is the promotion of economy and efficiency. *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 651 (N.D. Cal. 2007) (citing advisory committee notes). When common issues predominate, class actions achieve these objectives by minimizing costs and avoiding the confusion that would result from inconsistent outcomes. *Id.* Because no precise test can determine whether common issues predominate, the court must pragmatically assess the entire action and the issues involved. *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489 (E.D. Cal. 2006).

The predominance requirement of Rule 23(b)(3) is satisfied here because the common questions present a significant aspect of the case and can be resolved for all members of each Settlement Class in a single adjudication. *See* Fed. R. Civ. P. 23(b)(3); *see also Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Ramirez*, 301 F.R.D. at 419-20 (finding that FCRA section 1681e(b) claims presents predominating questions, and certifying class); *Patel*, 308 F.R.D. at 307-09 (same).

Class treatment is a superior method of resolving this case, as required by Rule 23(b)(3). Because the claims here are being certified for purposes of settlement, there are no issues with manageability, and resolution of nearly a thousand claims in a single adjudication is superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Particularly in light of Checkr's assertion that an arbitration clause and class action waiver cover the claims in this case, many class members would never be compensated for the violations alleged in this case, and consumers more broadly would not get the benefit of the

1   practice changes without the Agreement.  Accordingly, certification of this class action is favored

2   as the superior method of adjudicating this controversy.

3                                              **VII.   <u>CONCLUSION</u>**

4           For all the foregoing reasons, Plaintiff respectfully requests that this Court grant his

5   motion for preliminary approval of the settlement, and direct that notice be sent to the Settlement

6   Class.

7           RESPECTFULLY SUBMITTED AND DATED this 19th day of April, 2021.

8                                    By: */s/ John Soumilas*
                                          James A. Francis*
9                                         John Soumilas*
                                          Lauren KW Brennan*
10                                        Edward H. Skipton*
                                          FRANCIS MAILMAN SOUMILAS, P.C.
11                                        1600 Market Street, Suite 2510
                                          Philadelphia, PA 19110
12                                        T: (215) 735-8600
                                          F: (215) 940-8000
13                                        jfrancis@consumerlawfirm.com
                                          jsoumilas@consumerlawfirm.com
14                                        lbrennan@consumerlawfirm.com
                                          eskipton@consumerlawfirm.com
15

16                                        Erika Angelos Heath (SBN 304683)
                                          FRANCIS MAILMAN SOUMILAS, P.C.
17                                        369 Pine Street, Suite 410
                                          San Francisco, CA 94104
18                                        Tel: (628) 246-1352
                                          Fax: (215) 940-8000
19                                        eheath@consumerlawfirm.com

20                                        *Admitted *pro hac vice*
21
                                          *Attorneys for Plaintiff*
22                                        *and the Settlement Class*

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing document was electronically filed and served, via the Court's ECF system, on this 19th day of April, 2021.  The Court's ECF system will generate a Notice of Electronic Filing upon all counsel.

_/s/ John Soumilas_____
John Soumilas

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT