Erika Angelos Heath (SBN 304683)
FRANCIS MAILMAN SOUMILAS, P.C.
369 Pine Street, Suite 410
San Francisco, CA 94104
Tel:   (628) 246-1352
Fax:   (215) 940-8000
eheath@consumerlawfirm.com

James A. Francis*
John Soumilas*
Lauren KW Brennan*
Edward H. Skipton*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19110
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com
eskipton@consumerlawfirm.com

*Admitted *pro hac vice*

*Attorneys for Plaintiff
and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID EDWARD WATSON, <br><br>     *Plaintiff*, <br><br> v. <br><br><br> CHECKR, INC., <br><br>     *Defendant*. | Case No.  3:19-CV-03396-EMC <br><br> **MOTION FOR AWARD OF ATTORNEYS' FEES & EXPENSES AND IN SUPPORT OF SERVICE AWARD AND INDIVIDUAL SETTLEMENT** <br><br> Date:       Oct. 21, 2021 <br> Time:      1:30 p.m. <br> Courtroom:  3 |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................ii

NOTICE OF MOTION AND MOTION ..................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................2

I.    INTRODUCTION ..........................................................................................2

II.   BACKGROUND ............................................................................................4

III.  CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED AS FAIR AND
      REASONABLE.............................................................................................7

      A.   The Fees Attributable to The Injunctive Relief Portion of the Settlement Are
           Reasonable Under a Lodestar Analysis .............................................7

      B.   The Fees Attributable to the Monetary Relief Portion of the Settlement Are
           Reasonable Under a Percentage of the Fund Analysis .......................10

      C.   The Total Fee Is Reasonable In Light Of The Total Value Of The Settlement........12

           1.   Class Counsel Achieved an Excellent Settlement for the Classes.....................12

           2.   Class Counsel Assumed a Significant Risk of No Recovery.............................14

           3.   Class Counsel's Skill and Quality Of Work Delivered
                a Recovery For the Class .......................................................15

           4.   Awards In Similar Cases Show That the Requested Fee Is Reasonable............16

      D.   Class Counsel Are Entitled to Recover Reasonable Litigation Expenses ...............17

IV.   SERVICE AWARD AND INDIVIDUAL SETTLEMENT OF PLAINTIFF ...................17

V.    CONCLUSION .............................................................................................19

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
   2014 WL 12591624 (C.D. Cal. Jan. 10, 2014) ................................................................ 13

*Antonopulos v. N. Am. Thoroughbreds, Inc.*,
   1991 WL 427893 (S.D. Cal. May 6, 1991) ....................................................................... 7

*Bernstein v. Virgin America, Inc.*,
   No. 4:15-cv-02277-JST, ECF No. 402 (N.D. Cal. Jan. 21, 2020) .................................... 9

*Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
   2014 WL 4403524 (E.D. Va. Sept. 5, 2014),
   *settlement aff'd sub nom Berry v. Schulman,* 807 F. 3d 600 (4th Cir. 2015) ..................... 8

*Berry v. Schulman*,
   807 F.3d 600 (4th Cir. 2015) ........................................................................................... 9

*In re Bluetooth*,
   654 F.3d at 942 ............................................................................................................... 17

*Bowerman v. Field Asset Services*,
   2018 U.S. Dist. LEXIS 194421 (N.D. Cal. Nov. 14, 2018) ............................................. 9

*Camacho v. Bridgeport Fin. Inc.*,
   523 F.3d 973 (9th Cir. 2008) ........................................................................................... 9

*Carter v. Shalhoub Management Company Inc.*,
   No. 15-cv-1531 (ECF 69) (C.D. Cal. Mar. 15, 2017) ...................................................... 9

*City of Burlington v. Dague*,
   505 U.S. 557 (1992) ......................................................................................................... 7

*Der-Hacopian v. DarkTrace, Inc.*,
   2020 WL 7260054 (N.D. Cal. Dec. 10, 2020) ........................................................... 9, 19

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .................................................................. 15

*Flores v. Express Services Inc.*,
   2017 WL 1177098 (E.D. Pa. Mar. 29, 2017) ................................................................... 9

*Franco v. Ruiz Foods Prods., Inc.*,
   2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ................................................................ 16

*Grove v. Wells Fargo Fin. California, Inc.*,
   606 F.3d 577 (9th Cir. 2010) ........................................................................ 17

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)............................................................................... 7, 12

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................ 16

*Hofstetter v. Chase Home Finance, LLC*,
   2011 WL 5545912 (N.D. Cal. Nov. 14, 2011) ........................................ 16

*Ikuseghan v. Multicare Health Sys.*,
   2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) ..................................... 16

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)..................................................... 17

*Jenson. v. First Tr. Corp.*,
   2008 WL 11338161 (C.D. Cal. June 9, 2008) ......................................... 15

*Johnson v. General Mills, Inc.*,
   2013 WL 3213832 (C.D. Cal. June 17, 2003) ......................................... 16

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................................. 16

*Leo v. AppFolio, Inc.*,
   No. 3:17-cv-05771-RJB (W.D. Wash.) ................................................... 16

*Lofton v. Verizon Wireless (VAW) LLC*,
   2016 WL 7985253 (N.D. Cal. May 27, 2016) ........................................ 15

*Loginova v. The Russian School of Mathematics, Inc.*,
   No. RG18919000 (Alameda Cty. June 26, 2019)...................................... 9

*Marolda v. Symantec Corp.*,
   2013 WL 12310821 (N.D. Cal. Apr. 5, 2013) ........................................ 11

*McLeod v. Bank of Am., N.A.*,
   2019 WL 1170487 (N.D. Cal. Mar. 13, 2019) ........................................ 13

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1996) ....................................................... 17

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................. 11

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................. 15

iii

*Patel v. Trans Union, LLC*,
  2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) ..................................................... 9, 16

*Perkins v Linkedin Corp.*,
  2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ........................................................ 13

*In re Public Ser. Co. of New Mexico*,
  1992 WL 278452 (S.D. Cal. July 28, 1992) ........................................................ 17

*Radcliffe v. Experian Info. Solutions*,
  715 F.3d 1157 (9th Cir. 2013) ........................................................................ 19

*Rodriguez v. D.M. Camp & Sons*,
  2013 WL 2146927 (E.D. Cal. May 15, 2013) ...................................................... 11

*Rodriguez v. West Publ'ing Corp.*,
  563 F.3d 948 (9th Cir. 2009) .......................................................................... 18

*Schiller v. David's Bridal, Inc.*,
  2012 WL 2117001 (E.D. Cal. June 11, 2012) ...................................................... 16

*Six (6) Mex. Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ........................................................................ 11

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ..................................................................... 7, 11, 13

*Terraza v. Safeway, Inc.*,
  No. 4:16-cv-03994-JST, ECF No. 277 (N.D. Cal. Jul. 19, 2021) .......................... 9

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ....................................................................... 7, 12

*Wininger v. SI Mgmt., L.P.*,
  301 F.3d 1115 (9th Cir. 2002) ........................................................................ 17

**Statutes**

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, *et seq.* ........................... *passim*

  15 U.S.C. § 1681n ...................................................................................... 6, 13

  15 U.S.C. § 1681n(a)(3) ................................................................................... 7

  15 U.S.C. § 1681o(a)(2) ................................................................................... 7

## Federal Rules

Fed. R. Civ. P. 23(b)(2)............................................................................2

Fed. R. Civ. P. 23(b)(3)........................................................................3, 10

Fed. R. Civ. P. 23(h)...........................................................................7, 17

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 21, 2021 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable Edward M. Chen, Plaintiff David Watson ("Plaintiff") on behalf of himself and the proposed Settlement Class will respectfully move this Court for an award of attorneys' fees and litigation expenses, and for approval of the individual settlement and service award for Plaintiff.

This motion is based on the accompanying Memorandum of Points and Authorities; the Declaration of John Soumilas and accompanying exhibits; the Settlement Agreement (ECF 66-1); such other documents as may be submitted in support of this Motion; such oral argument as may be heard by the Court; and all other papers on file in this action.

Dated:  August 30, 2021

Respectfully submitted,

FRANCIS MAILMAN SOUMILAS P.C.

By: /s/  *Erika Heath*
     Erika Angelos Heath

Attorneys for Plaintiff and the Class

1

## MEMORANDUM OF POINTS AND AUTHORITIES
## I.        INTRODUCTION

Plaintiff David Edward Watson ("Plaintiff" or the "Class Representative") respectfully requests that the Court enter an order awarding his counsel reasonable attorneys' fees and litigation expenses in keeping with the class action settlement Agreement in this action.[1]  He further requests that this Court approve the individual settlement and service award set forth in the settlement Agreement.

This Court preliminarily approved this settlement and ordered that notice of the nationwide class be directed to the settlement class members on June 16, 2021. ECF 73. The class administrator has provided notice in accordance with this Court's order, and class members continue to make claims.  Pursuant to this Court's order, Plaintiff will file a motion for final approval of the class settlement by October 11, 2021 (10 days prior to the final approval hearing). ECF 73 at ¶ 15.

Pursuant to the Court's order, Class Counsel now move for an award of attorneys' fees and reimbursement of litigation costs and expenses as provided by the Agreement, ECF 66-1, ¶¶ 2.4.1(a)(4), 2.4.1(b). This case has been hard-fought, including detailed disclosures and discovery, and protracted settlement discussions that resulted in the settlement Agreement.  The amount Class Counsel seek is reasonable under both the percentage of the fund analysis and under the lodestar method of awarding attorneys' fees in this Circuit.  Indeed, the fees sought here are significantly *less* than Class Counsel's lodestar in this matter.

The Agreement provides that $125,000.00 of the settlement fund shall be allocated as attorneys' fees on a fee-shifting basis under the Fair Credit Reporting Act ("FCRA") for those fees incurred in connection with Class Counsel's work in obtaining the substantial Rule 23(b)(2) injunctive relief in the settlement.  ECF 66-1 at ¶ 2.4.1(b).  As discussed in section III.A below, this amount is based upon Class Counsel's reasonable hours expended and their reasonable hourly rates which have been repeatedly approved by courts within this Circuit.

---

[1]        Capitalized terms are used herein as they are in the settlement Agreement. ECF 66-1.

The Agreement further provides for a fee award of 25% of the $670,000.00 Net Settlement Amount on a percentage-of-the-fund basis in conjunction with Class Counsel's work in obtaining the Rule 23(b)(3) monetary relief provided by the settlement. ECF 66-1 at ¶ 2.4.1(a)(4).   As discussed in section III.B below, the resulting $167,500.00 in additional fees and expenses is in line with the Ninth Circuit's benchmark.

Even without allocating these amounts as set forth in the Agreement, the total combined award of $292,500.00 is reasonable under both percentage-of-the-fund analysis in light of Class Counsel's lodestar of more than $299,000.00 and the substantial value of the Settlement achieved. The settlement has a cash value of $795,000.00, *excluding* the value of the injunction, which secures substantial changes to the challenges practices for at least the next two years. As discussed in detail in section III.C.1 below, the injunction adds at least $309,000.00 in additional value to the settlement.  The overall requested payment to counsel (inclusive of litigation expenses as well), therefore, is 26.5% of the total value of the settlement.   When over $15,000.00 of litigation expenses are subtracted from the $292,500.00 total requested, Class Counsel's fee request is approximately 25% of the total value conferred. In light of the excellent results achieved, the combined fees and litigation expenses expended of over $315,000.00, and the substantial risks Class Counsel faced, the total fees and expenses requested here are reasonable.

Class Counsel now, as compensation for their achievement and effort, and for accepting the risk that there would be no recovery if they were not successful, request that the Court approve at total of two hundred ninety-two thousand, five hundred dollars ($292,500.00) in attorneys' fees and expenses combined.  Pursuant to the Agreement, Checkr does not contest the requested relief. ECF 66-1 at ¶ 7.1.

As detailed below, Class Counsel's efforts and risks justify the requested award of fees and reimbursement of expenses.   In support of their application approving payment for fees and reimbursement of expenses, Class Counsel rely upon the Declaration of John Soumilas ("Soumilas Decl."), filed herewith, which set forth Class Counsel's time and the expenses incurred on behalf of Plaintiff and the Class.

The reaction of the settlement class members also supports the request for fees and expenses.  The notices provided expressly informed them that Class Counsel would apply for an award of attorneys' fee and costs in the amount now requested.  To date, no class member has objected to the fees and costs requested,[2] which evidences both a satisfactory result and a reasonable fee.

With this motion, Plaintiff also seeks approval of the $10,000.00 combined service award and individual settlement for himself as provided in the Agreement.  ECF 66-1 at § 3.2, 7.2.  This amount is reasonable in light of Plaintiff's services to the class and the broader release of claims (including common law tort claims against either Defendant and its affiliates) that Plaintiff provides in the Agreement.  No class member has objected to this part of the settlement either, which was fully disclosed to the class.  As discuss below, it should be approved as well.

## II.   BACKGROUND

The class settlement in this matter is the result of vigorous advocacy, detailed discovery, and contested, protracted settlement negotiations with the assistance of a well-respected mediator, Hon. Diane Welsh (Ret.) of JAMS.  The case was undertaken and pursued on a contingent basis and represented a financial risk for Class Counsel.

This litigation commenced in June 2019 with the filing of Plaintiff's Class Action Complaint, which asserted that Checkr prepared and delivered an inaccurate consumer report about Plaintiff to his employer, Uber, Inc., using its proprietary "Continuous Check" product.  ECF 1.  Checkr filed its Answer and Affirmative Defenses on August 29, 2019.  ECF 26.  The parties agreed that the case was appropriate for early alternative dispute resolution with a private mediator, and agreed to postpone formal litigation while engaging in an informal exchange of data and settlement positions.  ECF 28 at p. 8.

The parties then participated in a protracted exchange of information regarding the

---

[2]      The deadline for objections to the settlement is September 9, 2021.  Should any objections referencing the requested fee be filed by the deadline, Plaintiff will address them in his motion for final approval or a supplemental brief.

Checkr's operations with respect to the "Continuous Check" product at issue, Checkr's interactions with Plaintiff Watson, and the number of other consumers who were similarly affected.  There was a substantial exchange of documents and other information about Plaintiff, Defendant, the background check product at issue, the major third party/affiliate involved, and damages information relative to the earnings of Uber drivers.

The parties' initial settlement discussions were not successful, and in March 2020 Checkr filed a motion to compel individual arbitration of Plaintiff's claims.  ECF 39.

Despite business disruptions due to the COVID-19 pandemic, the parties resumed settlement discussed and exchanges of information, and conducted lengthy private mediations with Judge Welsh on June 17, 2020 and again on August 27, 2020.  Still no settlement was reached. However, the parties continued to exchange information and continued to negotiate towards a resolution with the assistance of Judge Welsh, and a settlement in principle was reached in late September 2020.

The settlement was conditioned upon the completion of further confirmatory discovery regarding Checkr's procedures and the composition of the proposed settlement class, which was completed during the subsequent months.  During that time the parties continued to negotiate the specific terms of the settlement and drafted the notices to class members. The final settlement Agreement was executed on April 14, 2021.  ECF 66-1.

Through their exchange of information, the parties identified two groups of individuals for whom Checkr prepared a Continuous Check background report that contained a real-time arrest record, and for whom it is likely that the record pertained to a different person.

First, Checkr's records revealed that 247[3] individuals, like Plaintiff, disputed the appearance of an arrest record on a Continuous Check report, and Checkr removed the record as a result of the dispute. These individuals make up the "Dispute Subgroup" of the proposed settlement

_____

[3]     This number was updated from 230 figure provided in the Motion for Notice following a review of Checkr's records prior to the sending of notice to include all class members up through the date the court preliminarily approved the settlement. *See* ECF 73 at ¶ 1.

5

class, and are entitled to receive a *pro rata* cash payment from the settlement without the need to take any action, because the dispute serves as an affirmative statement of inaccuracy.  *See* ECF 70 at pp. 1-2.

Second, Checkr's records showed that it had prepared a Continuous Check report about an additional 742[4] individuals that included an arrest record, where, as with the report about Plaintiff, there was a mismatch of two different items of personal identifying information – specifically, neither the name nor the year of birth was a character-for-character match. These individuals make up the "Mismatch Subgroup" of the proposed settlement class.  Members of the Mismatch Subgroup are required to provide a claim form to serve as an affirmative statement of the inaccuracy of the arrest record on the report, similar to the dispute by the Dispute Subgroup.  *See* ECF 66-1 at § 2.4.3, Exhibit D; ECF 70 at pp. 1-2.  The main purpose of the claim form is to make sure that the mismatch is not simply a result of a typographical error, use of a nickname, or other innocuous non-conformity.

As of August 27, 2021, 48 individuals have submitted claims affirmatively stating that the arrest record on the Checkr report did not pertain or belong to them.  *See* Soumilas Decl. Ex. F. Class Counsel thus anticipates that the $463,500.00 from the Net Settlement Fund allocated for monetary recovery will be shared by at least 295 individuals, who will each receive a payment in excess of $1,500.00.

This represents an excellent recovery for class members in an FCRA class action.  The typical recovery in FCRA class actions normally falls within the $100-$1,000 statutory range.  15 U.S.C. § 1681n.  Therefore, a recovery of over $1,500 is a substantial victory by Class Counsel on behalf of the settlement class.

---

[4]     As above, this figure was updated following the filing of the Motion for Notice to include records for the full class period.

### III.     CLASS COUNSEL'S FEE REQUEST SHOULD BE APPROVED AS FAIR AND REASONABLE

Federal Rule of Civil Procedure 23(h) provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Further, the federal statute implicated in this litigation, the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, *et seq.* ("FCRA"), is a fee-shifting statute that mandates the award of reasonable attorney's fees and costs to a prevailing party.  15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

"Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)).  Class Counsel's request for fees is reasonable, as demonstrated below.

#### A.   The Fees Attributable to The Injunctive Relief Portion of the Settlement Are Reasonable Under a Lodestar Analysis

In fee-shifting cases, courts employ the lodestar method in determining an appropriate fee award.  *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee"). This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

"Under the lodestar/multiplier method, the district court first calculates the 'lodestar' by multiplying the reasonable hours expended by a reasonable hourly rate." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 n.2 (9th Cir. 1994); *see also Staton*, 327 F.3d at 965.

Here, the claims asserted arise under the fee-shifting provisions of the FCRA.  The provision for attorneys' fees under the FCRA is mandatory because of the legislation's intent to encourage attorneys to take small claims in order to serve the important public policy behind the statute. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

The settlement provides for an award of $125,000.00 in attorneys' fees pursuant to this fee-

shifting mechanism in connection with the injunctive relief portion of the settlement.  ECF 66-1 at ¶ 2.4.1(b).  This is consistent with the approach taken in other FCRA class actions where substantial injunctive relief was obtained alongside monetary relief.  *See Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 3:11-CV-754, 2014 WL 4403524, at *15 (E.D. Va. Sept. 5, 2014) (granting motion for fees with similar structure proposed here in FCRA class settlement providing both injunctive and monetary relief), *settlement aff'd sub nom Berry v. Schulman,* 807 F. 3d 600 (4th Cir. 2015).

Counsel faced a substantial risk of losing this matter with the prospect of receiving no compensation.  They advanced funds to effectively litigate the case; they bore the burden of a delay in receiving attorneys' fees because of the contingent nature of their services; they rendered quality services in complex consumer protection litigation and obtained an excellent result through the settlement for not only the Class, but also for the public at large, which is an additional significant consideration. MANUAL FOR COMPLEX LITIGATION (FOURTH), § 14.13, p. 198.

The total lodestar and expenses for counsel here as described in the Soumilas Declaration totals $299,371.50 reflecting 471.4 hours of attorney and paralegal time and $15,683.89 in unreimbursed costs.  Soumilas Decl. at ¶¶ 13-30. This includes estimated time going forward to address ongoing class member claims and inquiries, to prepare the final approval motion, and to attend the final approval hearing.

The lodestar calculations of Plaintiff's counsel are based upon reasonable hourly rates. Plaintiff's counsel set their rates for attorneys, and staff members based on a variety of factors, including among others: the experience, skill and sophistication required for the types of legal services typically performed; the rates customarily charged in the markets where legal services are typically performed; and the experience, reputation and ability of the attorneys and staff members. Soumilas Decl. ¶¶ 4-16, and Exhibits B and C thereto.

In support of the hourly rates charged by the attorneys of Francis Mailman Soumilas, P.C., Plaintiff's counsel have submitted the expert report of Jeffrey D. Polsky, Esq. of Fox Rothschild, LLP (Exhibit C to Soumilas Decl.) recommending hourly rates to be charged by Francis Mailman

Soumilas, P.C. in light of the prevailing market hourly billing rates for legal services in the San Francisco area.[5] Soumilas Decl. ¶ 14. Francis Mailman Soumilas has set its regularly hourly rates based upon the independent analysis of the attorneys of Fox Rothschild, LLP, for many years. Soumilas Decl. ¶ 14 and Exhibits B and C thereto. This analysis accounts for the experience and specialization of Francis Mailman Soumilas attorneys in fair credit reporting litigation. *Id*.

Francis Mailman Soumilas hourly rates as set by Fox Rothschild, LLP attorneys, including those adjusted to reflect market rates within the Ninth Circuit, have been approved by courts across the country. *See Der-Hacopian v. DarkTrace, Inc.*, No. 18-cv-06726-HSG, 2020 WL 7260054, at * 7-8 (N.D. Cal. Dec. 10, 2020) (approving firm's hourly rates); *Patel v. Trans Union, LLC,* No. 14-cv-00522-LB, 2018 WL 1258194, at *7 (N.D. Cal. Mar. 11, 2018) (firm's "billing rates are within normal and customary ranges for timekeepers with similar qualifications and experience in the San Francisco market"); *Carter v. Shalhoub Management Company Inc.*, No. 15-cv-1531 (ECF 69) (C.D. Cal. Mar. 15, 2017) (granting firm's fee petition in full, including 33% of fund); *Berry v. Schulman*, 807 F.3d 600, 617 (4th Cir. 2015) (affirming fee award and approving hourly rates); *Flores v. Express Services Inc.,* No. 2:14-cv-03298-HB, 2017 WL 1177098, at *4 (E.D. Pa. Mar. 29, 2017). [6]

The hourly rates for Plaintiff's counsel are well within the range of what is reasonable and appropriate. The hourly rates for the attorneys are the same as the regular current rates charged for their services in their standard non-class matters, including both contingent and non-contingent

---

[5]    It is well established that appropriate hourly rates are "the prevailing market rate in the relevant community," and that the relevant community is the forum in which the district court sits. *Camacho v. Bridgeport Fin. Inc.*, 523 F.3d 973, 978-79 (9th Cir. 2008) (reversing order awarding less than half of attorneys' fees sought in FDCPA case because the district court failed to consider prevailing hourly rates within that district).

[6]    With respect to the work performed by Erika A. Heath her rates have been approved in other matters, including *Terraza v. Safeway, Inc.*, No. 4:16-cv-03994-JST, ECF No. 277 (N.D. Cal. Jul. 19, 2021) (lodestar cross-check based on her $525/hour rate). Her prior rate of $475 per hour was approved in *Bowerman v. Field Asset Services*, No. 3:13-cv-00057-WHO, 2018 U.S. Dist. LEXIS 194421 (N.D. Cal. Nov. 14, 2018), *Bernstein v. Virgin America, Inc.*, No. 4:15-cv-02277-JST, ECF No. 402 (N.D. Cal. Jan. 21, 2020), and again after a lodestar cross-check in *Loginova v. The Russian School of Mathematics, Inc*., No. RG18919000 (Alameda Cty. Jun. 26, 2019). *See also* Soumilas Decl. ¶¶ 20-26.

matters.  There has not been any alteration or deviation from the firms' hourly rates to account for the added complexity or increased risk factor of this action.  The attorneys concentrate their practice in the area of consumer protection litigation.  The hourly rates are within the range charged by attorneys with comparable experience levels for consumer class action litigation of a similar nature.  *See* Soumilas Decl. ¶ 14.  The history and biography of the attorneys are attached in the Soumilas Declaration as Exhibit A thereto.  *See also id*., ¶¶ 20-22 (biography of Erika Heath)

The injunctive relief portion of the settlement represents a substantial portion of the relief provided to settlement class members, and was a primary focus of the parties' August 27, 2020 meditation and further separate settlement discussion that required detailed negotiations and significant back-and-forth exchanges between the parties.  *See* Soumilas Decl. at ¶ 12(h).   Based upon a review of contemporaneous time records, and best professional judgment, Class Counsel attribute $125,000.00 of their documented lodestar to the achievement of the injunction here. *Id*.

**B. The Fees Attributable to the Monetary Relief Portion of the Settlement Are Reasonable Under a Percentage of the Fund Analysis**

The settlement Agreement separately provides for compensation for Class Counsel in recognition of their work in achieving a substantial monetary award for class members, by securing an award of 25% of the Net Settlement Fund, or $167,500.00.  ECF 66-1 at 2.4.1(a)(4). This portion of the requested fee is reasonable both under the lodestar method discussed above, in light of Class Counsel's total documented lodestar of $299,371.50, and under the percentage of the fund analysis. *See* Soumilas Decl. ¶ 30.

Even taking the injunctive relief compensation for Class Counsel completely out of the equation, and not accounting for over $15,000 in litigation expenses, the requested fee of $167,500.00 for the Rule 23(b)(3) settlement is still approximately $5,000 *less* than counsel's remaining (*i.e*., non-injunction-related) lodestar. When costs and expenses are taken into account, the requested fee here is more than $20,000 *less than lodestar*, as discussed in sec. II.C below.

Generally, under the percentage method, a court assesses the amount of the common fund

by determining the value of the benefits that the settlement agreement confers upon the class and then awards a percentage of that fund as attorneys' fees. *Staton*, 327 F.3d at 974-75.

In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 33 1/3% of the total settlement value. *Powers*, 229 F.3d at 1256; *see also Rodriguez v. D.M. Camp & Sons*, No.: 1:09-cv-00700-AWI-JLT, 2013 WL 2146927, at *13 (E.D. Cal. May 15, 2013) ("In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark" and granting fee request of 30% of $675,000 common fund). The benchmark in the Ninth Circuit is 25% of the common fund. *See Hanlon*, 150 F.3d at 1029. ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *Six (6) Mex. Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990);

"However, in most common fund cases, the award exceeds [the 25%] benchmark." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (*citing In re Activision Secs. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method.")).

As the Ninth Circuit has held, "[t]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*,, 290 F.3d at 1048-50. Thus, in *Vizcaino*, the Ninth Circuit approved an award of attorneys' fees amounting to 28% of the common fund, which was based on the district court's consideration of factors including the excellent results achieved by counsel, the risky nature of the representation, the benefits generated for the class "beyond the cash settlement fund," the market rate for such contingency representation, and the length and expense of the litigation. *Id*. at 1048-50; *see also In re Washington Public Power Supply System Secs. Litig.*, 19 F.3d at 1299-1302 (holding district court abused its discretion in failing to apply risk multiplier to lodestar).

The 25% fee requested for the monetary relief portion of the settlement is therefore reasonable and fully supported by Class Counsel's lodestar as well.

**C.** __The Total Fee Is Reasonable In Light Of The Total Value Of The Settlement__

Even if the Court chooses to review the reasonableness of the requested fee in totality, as $292,500.00, the figure is reasonable both under the lodestar method in light of Class Counsel's documented lodestar of $299,371.50 and under the percentage of the fund analysis when the value of the injunctive relief is taken into account.

Taking into account this additional value of the injunctive relief going forward, Class Counsel submits that the total value of the settlement is at least $1,104,000.00. The requested total award of $292,500.00 (which is also inclusive of litigation expenses) is 26.5% of this total value conferred upon the class. Taking into account the substantial success achieved, the risks Class Counsel faced, and the range of similar awards, the proposed award is entirely reasonable.

1. **Class Counsel Achieved an Excellent** Settlement for the Classes

The "most critical" factor in assessing the reasonableness of a fee award is the result obtained for the class. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Here, Class Counsel obtained significant monetary and nonmonetary relief, which is all the more remarkable in light of the defenses raised by Checkr.

Cognizant of the challenges of this litigation that could have prevented Settlement Class Members from recovering anything, Class Counsel sought a resolution that would ensure that class members who had a similar experience to Plaintiff's would receive financial compensation for their injuries. Class Counsel was able to achieve this result despite Checkr's assertion that an arbitration clause with a class action waiver applied to Plaintiff's claims. *See* Soumilas Decl. ¶ 12. Instead, Class Counsel were able to obtain documents and class size data necessary to negotiate a class-wide settlement, and obtain a highly favorable result. *Id.*

Although it took several additional months of negotiation, the Parties agreed to the settlement which provides for substantial cash payments to class members identified as having had an inaccurate record reported about them. As noted above, the class payments to class members are projected to be significant (in excess of $1500 per class member), which is an excellent result of an FCRA case where the certification of claims is usually in the statutory damages range of

$100-$1,000. *Id.* ¶ 12; *see also* 15 U.S.C. § 1681n.

The efficiency with which Class Counsel obtained this settlement on behalf of class members is itself a benefit.  Courts recognize that classes benefit from resolution when further litigation would have delayed any potential recovery for the Class and have been costly and risky." *Perkins v Linkedin Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *2 (N.D. Cal. Feb. 16, 2016). Among other things, absent settlement, Plaintiff would have had to defeat Checkr's motion to compel arbitration, and proceed to prevail at class certification, likely defend against a motion for summary judgment, and then prevail at trial, and on appeal. *See also In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, No. 09 MDL 2007, 2014 WL 12591624, at *4 (C.D. Cal. Jan. 10, 2014) (recognizing the benefit of counsel's "effective and efficient" prosecution of the case).

The value of the injunctive relief obtained by Class Counsel is also an important component of assessing the results obtained on behalf of the class.  *See Staton*, 327 F.3d at 974; *see also Vizcaino*, 290 F.3d at 1049 (consideration given to "counsel's performance generated benefits beyond the cash settlement fund").  This Court has historically taken the value of such injunctive relief into account when called to weigh the reasonableness of the percentage of fees sought by class counsel against the total value of the settlement obtained.  *See McLeod v. Bank of Am., N.A.*, No. 16-cv-03294-EMC, 2019 WL 1170487, at *6-7 (N.D. Cal. Mar. 13, 2019) (noting that the value of the injunction "would reduce the fee request to 25% of the total settlement value."); *see also Marolda v. Symantec Corp.*, No. 08-cv-05701 EMC, 2013 WL 12310821, at *6 (N.D. Cal. Apr. 5, 2013).

The proposed injunction here is estimated to increase the value of the $463,500.00 cash settlement fund by at least 2/3 (or approximately $309,000.00).  The injunction requires Checkr, before furnishing a CC Arrest Report to an end-user (such as Uber), to manually review the record as the final step in its quality control process. This manual review process roots out records where there is a data mismatch between the arrest record and the consumer's own identifiers.  Had these measures been in place when Checkr launched its CC Arrest Report product, then it is Plaintiff's view the mismatched records at issue in this case would have been prevented entirely, and the class

members would never have been deactivated from Uber.

Because the CC Arrest Report product is, by nature, a *continuous* matching product, the injunction minimally saves the 295 class members and/or additional Uber drivers from future harm as they would likely be matched with an erroneous criminal record at some point over the next two years via a random or annual review of their backgrounds by Uber.  Neither the class members in this case, nor the potential future consumers with common names who drive for Uber, have to face deactivations from Uber, and the resulting lost income, while they straighten out any criminal records mismatch with Checkr, due to the injunction, in Plaintiff's view.

By preventing this future likely lost income in the first place, the injunction has palpable economic value.  Since a minimum of 295 class members in this case suffered a harm with a compromise value of $463,000 (the portion of the net settlement fund allocated to cash recovery for the injured class members) over a 3 year class period, ECF 66-1 at 1.7, then it is reasonable to infer that the 2-year injunction period is worth at least 2/3 (or 66.6%) of that value (or $309,000.00), assuming the same rate of mismatch.

This valuation focuses exclusively on the agreed-upon recovery of injured class members, and does not take into account the transactional costs of litigation. Thus adding $309,000.00 to the $795,000.00 settlement cash total, the overall value of this settlement is $1,104,000.00.  Class Counsel's request for $292,000.00 is 26.5% of that total value.  When Class Counsel's litigation expenses of over $15,000.00 are taken into account, the fee request of approximately $277,000.00 amounts to approximately 25% of the value conferred.  Thus even if the fees request here is taken as a whole *vis a vis* the value of the entire settlement, it is reasonable under either a lodestar approach or a percentage of recovery approach.

2.  **Class Counsel Assumed a Significant Risk of No Recovery**

Counsel handled this case on a wholly contingency basis and undertook the risk of no recovery. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (upholding award of fees and costs, finding district court "correctly noted that class counsel risked great time and effort") (citing *Vizcaino*, 290 F.3d at 1048) ("Uncertainty that *any* recovery

ultimately would be obtained is a highly relevant consideration.  Indeed, the risks assumed by Counsel, particularly the risk of non-payment or reimbursement of expenses, is important to determining a proper fee award."); *see also Jenson. v. First Tr. Corp.*, No. CV 05-3124 ABC, 2008 WL 11338161, at *12 (C.D. Cal. June 9, 2008) (internal citation omitted). "This is especially true where, as here, class counsel has significant experience in the particular type of litigation at issue; indeed, in such contexts, courts have awarded an even higher 33 percent fee award." *Id.* (citing *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005)). Class Counsel have significant experience litigating consumer protection claims, including FCRA claims. Soumilas Decl. ¶¶ 4-12.

3.  **Class Counsel's Skill and Quality Of Work Delivered a Recovery For the Class**

Despite the challenges involve, Class Counsel were able to litigate this case efficiently because of their experience in litigating class action cases, and FCRA class actions in particular. Soumilas Decl. ¶¶ 4-18. This depth of experience with consumer claims and class action litigation allowed Class Counsel to pursue the case and negotiate a settlement that capitalized on the claims' strengths while taking into account the risks of continued litigation.

"The quality of opposing counsel is also relevant to the quality and skill that class counsel provided." *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016).  Checkr engaged skilled class action defense attorneys with substantial experience in FCRA cases and who mounted a substantial challenge to the claims in the case, including through an early challenge to class treatment by seeking to compel individual arbitration.   ECF 39. Class Counsel's ability to negotiate a favorable settlement despite the quality of work done by Checkr's counsel further supports their fee request. *See, e.g.*, *Lofton v. Verizon Wireless (VAW) LLC*, No. C 13-05665 YGR, 2016 WL 7985253, at *1 (N.D. Cal. May 27, 2016) (the "risks of class litigation against an able defendant well able to defend itself vigorously" support an upward adjustment in the fee award); *Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (where defense counsel "understood the legal uncertainties in this case[] and were in a position to mount a vigorous defense," the favorable settlement was a

1    "testament to Plaintiffs' counsel's skill").

2        4.   **Awards In Similar Cases Show That the Requested Fee Is Reasonable**

3        Class Counsel requests attorney's fees and reimbursable expenses totaling $292,500.00.

4    After deduction of expenses (discussed below), the fees request totals approximately $277,000.00,

5    which is 25% of the $1,104,000.00 total value of the settlement.

6        This is well within the range of approval and is consistent with fee awards in other FCRA

7    class actions.  *See, e.g., Leo v. AppFolio, Inc.*, No. 3:17-cv-05771-RJB (W.D. Wash.) at ECF 57,

8    65 (awarding $1.3 million in fees, representing 29.4% of common fund in FCRA class action);

9    *Patel*, 2018 WL 1258194, at *5-7 (approving an award of attorneys' fees to class counsel

10   amounting to 32% of the common fund); *Ikuseghan v. Multicare Health Sys*., No. C 14-5539 BHS,

11   2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (approving 30% fee in consumer protection

12   class action).[7]

13       This is also not a case in which a mega-fund settlement would provide Class Counsel with

14   a windfall. *See In re Bluetooth*, 654 F.3d at 942. Consideration of all relevant factors confirms the

15   reasonableness of a fee award of 25% of the total value of the settlement after expenses.

16

17   ────────────────────────
     [7]     *See also Johnson v. General Mills, Inc.*, No. SACV 10-00061-CJC(ANx), 2013 WL
18   3213832, at *6 (C.D. Cal. June 17, 2003) (awarding fees amounting to "30% of the total settlement
     fund" and observing that "[o]ther courts have regularly awarded fee amounts above the benchmark
19   in common fund cases.") (*citing Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D.
     Cal. 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3%
20   of the total settlement value, with 25% considered the benchmark.  However, the exact percentage
     varies depending on the facts of the case, and in most common fund cases, the award exceeds that
21   benchmark.") (internal quotation marks and citations omitted)); *Schiller v. David's Bridal, Inc.*,
     No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *19 (E.D. Cal. June 11, 2012) (approving
22   attorney fee award that represented 32.1% of the total class settlement amount); *Franco v. Ruiz
     Foods Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801 at *18 (E.D. Cal. Nov. 27, 2012)
23   (holding attorney's fees award of 33 percent of the total class settlement amount as fair and
     reasonable); *Hofstetter v. Chase Home Finance, LLC*, No. C 10-1313 WHA, 2011 WL 5545912
24   at *2 (N.D. Cal. Nov. 14, 2011) (granting attorney's fee award that represented 32% of class
     settlement); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 WL 1594403 at *19-21 (C.D.
25   Cal. June 10, 2005) (awarding fees amounting to one-third of the common fund and citing *In re
     Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of fees equal to
26   one-third of total recovery); *In re Public Ser. Co. of New Mexico*, No. 91-00536-M, 1992 WL
     278452 at *1, *12 (S.D. Cal. July 28, 1992) (awarding one-third); *Antonopulos v. N. Am.
27   Thoroughbreds, Inc.*, No. 87-00979-G-CM, 1991 WL 427893 at *1, *4 (S.D. Cal. May 6, 1991)
     (awarding one-third).

28

                                              16

**D.  Class Counsel Are Entitled to Recover Reasonable Litigation Expenses**

In a class action, the court may award reasonable litigation costs "that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996); *see also Wininger v. SI Mgmt., L.P.*, 301 F.3d 1115, 1120-21 (9th Cir. 2002) (noting that "jurisdiction over a fund allows for the district court to spread the costs of the litigation among the recipients of the common benefit").  In FCRA litigation, the Ninth Circuit has held that non-taxable expenses may be taken into account. *See Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 583 (9th Cir. 2010) (courts may award non-taxable costs as part of the attorney's fee award in an FCRA case).

To date, Class Counsel have incurred out-of-pocket litigation expenses totaling $15,683.89, primarily to cover expenses related to investigation, travel, mediation fees, and administrative costs such as mailing, and messenger expenses. Soumilas Decl. ¶27 and Exhibit D thereto. These out-of-pocket costs were necessary to secure the resolution of this litigation and should be recouped. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in a class action litigation). The out-of-pocket expenses here were reasonably incurred and are included within the total amount sought by Class Counsel herein.

**IV.      SERVICE AWARD AND INDIVIDUAL SETTLEMENT OF PLAINTIFF**

The Agreement provides for, and Plaintiff now requests, an individual settlement and service award of $10,000.00, in recognition of his service to the Settlement Class, and the broader release he is providing to Defendant and the other released parties. ECF 66-1 at § 3.2, 7.2, Exhibit E. Such awards, which promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits, should be approved. *See Rodriguez v. West Publ'ing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (finding service awards may also be appropriate to

"compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.").

The requested award here would compensate Plaintiff Watson for his contributions in stepping forward initially to bring this case and given his service and involvement as the sole Class Representative throughout the litigation. Mr. Watson actively participated in this litigation at all stages, including responding to factual inquiries from counsel during the course of exchanges of information by counsel, attending mediation, participating in continued settlement negotiations after mediation, and was prepared to testify at trial. *See* Soumilas Decl. ¶12(i).

Furthermore, in addition to the class claims, Mr. Watson has agreed to release Defendant from all claims (even unknown claims, *and tort claims*) he has against it *and its affiliates*, which is unlike any other class member. ECF 66-1 at § 3.2, Exhibit E. Although it is not certain based on the posture of the case, whether Mr. Watson has common law claims against Checkr and their affiliates, it is nonetheless an additional restriction that is added to his case. The parries negotiated this broader release for Watson separately and it must be presumed and that Checker and/or one or more of its affiliates (perhaps the vendor of these same mismatched criminal records) sought such a release and/or contributed some sum of the $10,000.00 or some other consideration to Defendant in order to obtain the broader release that he gave in exchange.  The Agreement also imposes ongoing obligations upon Watson personally that it does not impose of other class members.  *Id*. at § 4.

Plaintiff's support of the settlement is independent of any service award and not conditioned on the Court awarding any particular amount or any award at all. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013) (finding incentive award must not "corrupt the settlement by undermining the adequacy of the class representatives and class counsel").

Plaintiff's requested service award and individual settlement is appropriate in light of his substantial participation in this litigation and the broader release provided.  *See, e.g., Der-*

*Hacopian v. DarkTrace, Inc.*, 2020 WL 7260054, at *8 (approving $15,000 service award for class representative in FCRA class action). Plaintiff therefore respectfully requests that this Court approve the $10,000 individual settlement and service award provided for in the Settlement Agreement.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiff and Class Counsel respectfully requests that this Court approve a payment of $292,500.00 for their attorneys' fees and reimbursement of litigation costs and expenses, and approve an individual settlement and service award of $10,000.00 to Plaintiff.

RESPECTFULLY SUBMITTED AND DATED this 30th day of August, 2021.

By: */s/ Erika Angelos Heath*
Erika Angelos Heath (SBN 304683)
FRANCIS MAILMAN SOUMILAS, P.C.
369 Pine Street, Suite 410
San Francisco, CA 94104
Tel: (628) 246-1352
Fax: (215) 940-8000
eheath@consumerlawfirm.com

James A. Francis*
John Soumilas*
Lauren KW Brennan*
Edward H. Skipton*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19110
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com
eskipton@consumerlawfirm.com

*Admitted *pro hac vice*

*Attorneys for Plaintiff*
*and the Settlement Class*