Erika Angelos Heath (SBN 304683)
FRANCIS MAILMAN SOUMILAS, P.C.
369 Pine Street, Suite 410
San Francisco, CA 94104
Tel:    (628) 246-1352                                      .
Fax:   (215) 940-8000
eheath@consumerlawfirm.com

James A. Francis*
John Soumilas*
Lauren KW Brennan*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

*Admitted *pro hac vice*

*Attorneys for Plaintiff
and the Proposed Classes*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID EDWARD WATSON,<br><br>        *Plaintiff,*<br><br>v.<br><br>CHECKR, INC.,<br><br>        *Defendant.* | Case No.  3:19-CV-03396-EMC<br><br>**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:       Oct. 21, 2021<br>Time:       1:30 p.m.<br>Courtroom:  3 |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

NOTICE OF MOTION AND MOTION ............................................................................... 1

I.    INTRODUCTION .................................................................................................... 2

II.   BACKGROUND ...................................................................................................... 3

III.  THE PROPOSED SETTLEMENT ......................................................................... 4

      A.    Injunctive Relief. ......................................................................................... 4

      B.    Monetary Relief. ........................................................................................... 4

      C.    The Costs of Notice and Administration. ..................................................... 5

      D.    *Cy Pres* Recipient. ....................................................................................... 5

      E.    Release. ......................................................................................................... 5

      F.    Service Award and Attorney's Fees and Expenses. ...................................... 6

IV.   LEGAL STANDARD .............................................................................................. 6

V.    The Settlement Class Should be Certified. ............................................................. 7

      A.    The Class Is Sufficiently Numerous ............................................................. 7

      B.    There are Questions of Law and Fact That Are Common to the Class ............. 8

      C.    Plaintiff's Claims Are Typical of the Proposed Class ................................... 9

      D.    Plaintiff and His Counsel Will Adequately Represent the Class ..................... 9

      E.    The Class Meets the Requirements of Rule 23(b)(3) ................................... 10

            1.    Common Questions of Law and Fact Predominate ............................... 10

            2.    A Class Action Is Superior to Other Available Means of
                  Adjudication ........................................................................................ 10

VI.   THE SETTLEMENT SHOULD BE APPROVED AS  FAIR, REASONABLE, AND
      ADEQUATE ........................................................................................................... 11

      A.    The Strength of Plaintiff's Case. ................................................................ 11

      B.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation. ..... 12

      C.    The Risk of Maintaining Class Action Status through Trial. ........................ 12

      D.    The Amount Offered in Settlement. ............................................................ 13

      E.    The Extent of Discovery Completed and the Stage of Proceedings. ............... 13

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

F.      The Experience and Views of Counsel.......................................................... 14

G.      The Presence of a Governmental Participant............................................... 14

H.      The Reaction of Settlement Class Members................................................. 14

VII.    Settlement Class Members Received  the Best Notice Practicable ................................. 15

VIII.   CONCLUSION......................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

2

3

### CASES

4

*Agne v. Papa John's Int'l., Inc.,*
 286 F.R.D. 559 (W.D. Wash. 2012) ................................................................. 10

5

*Allen v. Bedolla,*
6  787 F.3d 1218 (9th Cir. 2015) .......................................................................... 6

7

*Berger v. Home Depot USA, Inc.,*
 741 F.3d 1061 (9th Cir. 2014) ......................................................................... 10

8

9

*Blackie v. Barrack,*
 524 F.2d 891 (9th Cir. 1975) ............................................................................ 8

10

*Churchill Vill., L.L.C. v. Gen. Elec.,*
11  361 F.3d 566 (9th Cir. 2004) ................................................................... 6, 7, 11

12

*Comcast Corp. v. Behrend,*
 133 S. Ct. 1426 (2013) .................................................................................... 13

13

*Garner v. State Farm Auto Ins. Co.,*
14  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................................................. 14

15

*Hanlon v. Chrysler Corp.,*
16  150 F.3d 1011 (9th Cir. 1988) .................................................................. 7, 8, 9

17

*Hanon v. Dataproducts Corp.,*
 976 F.2d 497 (9th Cir. 1992) ............................................................................ 9

18

*Hansen v. Ticket Track, Inc.*
19  213 F.R.D. 412 (W.D. Wash. 2003) ................................................................ 9

20

*Leo v. AppFolio, Inc,*
21  No. 3:17-cv-05771-RJB (W.D. Wash.) ...................................................... 8, 13

22

*Lerwill v. Inflight Motion Pictures, Inc.,*
 582 F.2d 507 (9th Cir. 1978) ............................................................................ 9

23

*Marshall v. Holiday Magic, Inc.,*
24  550 F.2d 1173 (9th Cir. 1977) ........................................................................ 12

25

*McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership*
 *Plan & Trust,*
26  268 F.R.D. 670 (W.D. Wash. 2010) ................................................................ 7

27

28

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ................................................................... 15

*Officers for Justice v. Civil Service Comm'n of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ................................................................... 12

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ..................................................................... 7

*Parra v. Bashas', Inc.*,
    536 F.3d 975 (9th Cir. 2008) ..................................................................... 8

*Patel v. Trans Union, LLC*,
    308 F.R.D. 292 (N.D. Cal. 2015) ............................................................... 8

*Patel v. Trans Union, LLC*,
    No. 3:14-cv-0522-LB (N.D. Cal.) ............................................................ 13

*Pelletz v. Weyerhaeuser Co.*,
    255 F.R.D. 537 (W.D. Wash. 2009) .......................................................... 14

*Ramirez v. Trans Union, LLC*,
    301 F.R.D. 408 (N.D. Cal. 2014) ............................................................... 8

*Safeco Insurance Co. of America v. Burr*,
    551 U.S. 47 (2007) .................................................................................. 12

*Shames v. Hertz Corp.*,
    2012 WL 5392159 (S.D. Cal. Nov 5, 2012) .............................................. 13

*Tadepalli v. Uber Techs., Inc.*,
    2016 WL 1622881 (N.D. Cal. Apr. 25, 2016) ........................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 131 S. Ct. 2541 (2011) ...................................................... 13

**STATUTES**

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ....................................... *passim*

    15 U.S.C. § 1681e(b) ........................................................... 2, 5, 8, 11

    15 U.S.C. § 1681n ....................................................................... 5, 13

Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* .................................. 5, 14

**FEDERAL RULES**

Fed. R. Civ. P. 23 ............................................................... 7, 8, 12, 15

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Fed. R. Civ. P. 23(a) ........................................................................................... 6, 13

Fed. R. Civ. P. 23(a)(2) ............................................................................................ 8

Fed. R. Civ. P. 23(a)(3) ............................................................................................ 9

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 9

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 8, 10

Fed. R. Civ. P. 23(f) .............................................................................................. 12

## OTHER AUTHORITIES

*Manual for Complex Litigation* (Fourth) ("MCL 4th") ............................................. 7

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 21, 2021 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable Edward M. Chen, Plaintiff David Watson ("Plaintiff") on behalf of himself and the proposed Settlement Class will respectfully move this Court for final approval of the class action settlement in the instant case.

This motion is based on the accompanying Memorandum of Points and Authorities; the Settlement Agreement (ECF 66-1); such other documents as may be submitted in support of this Motion; such oral argument as may be heard by the Court; and all other papers on file in this action.

Dated:  October 11, 2021

Respectfully submitted,

FRANCIS MAILMAN SOUMILAS P.C.

By:  /s/  *Erika Heath*
　　　Erika Angelos Heath

Attorneys for Plaintiff and the Class

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I. **INTRODUCTION**

This class action lawsuit has been brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.  Defendant Checkr, Inc. ("Checkr") is a consumer reporting agency ("CRA") regulated by the FCRA, and regularly prepares and selling consumer reports for employment purposes, also known as background checks.

As set forth in detail in Plaintiff's Motion for Preliminary Approval (ECF 66), this case addresses Checkr's practices with respect to its "Continuous Check" background check product. Plaintiff's claim under the FCRA is that Checkr's procedures for preparing Continuous Check reports violate the FCRA's mandate that CRAs "follow reasonable procedures to assure maximum possible accuracy of the information" included on a report.  15 U.S.C. § 1681e(b). Plaintiff brought this case on behalf of other similarly situated consumers, who were the subject of a "Continuous Check" consumer report prepared by Checkr which contained an inaccurate arrest record.

The parties have successfully negotiated a class-wide settlement that both requires Checkr to change its practice for obtaining arrest records and attributing them to consumers in order to improve the accuracy of reports in the future, and also provides monetary recovery for all class members for whom the report was confirmed to be accurate.  On June 16, 2021, this Court entered an order granting preliminary approval of the proposed settlement, finding that the parties' settlement was fair, reasonable, and adequate, and finding that the prerequisites for a class action have been satisfied.  ECF 73.  The Court's Order further directed the parties to provide notice to the Class.  *Id.*

The Settlement Administrator, JND Legal Administration LLC ("JND") has successfully fulfilled its obligations to provide notice to the Class and has provided direct notice to 96% of the Class via email, and also reached 84% of class members with a mailed hard copy notice.  The September 9, 2021 deadline for Class Members to opt out and/or object to the settlement has passed, and zero Class Members have elected to opt out or object, reaffirming the fair, reasonable and adequate nature of the parties' Class Settlement.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Given that nothing has occurred since June 16, 2021 to disturb the Court's findings of that date, and given the uniformly positive reaction of the Class Members, Plaintiff respectfully requests that this Court enter an order granting final approval of the proposed Class Settlement of this matter.

## II.    BACKGROUND

This litigation commenced in 2019 with the filing of Plaintiff's Class Action Complaint, which asserted that Checkr failed to use reasonable procedures to assure the maximum possible accuracy of arrest information included on Continuous Check reports. The parties explored early settlement of this matter, including an intensive exchange of relevant information regarding the Continuous Check product.   The parties also exchanged their litigation positions, including Checkr's assertion that a binding arbitration clause with a class action waiver applied to Plaintiff's claims.  *See* ECF 39.

The parties nevertheless continued their settlement discussions, and despite business disruptions due to the COVID-19 pandemic, were able to reach a settlement with respect to two groups of similarly situated individuals.   First, the "Dispute Subgroup," consisting of 247 individuals, who, like Plaintiff, disputed the appearance of an arrest record on a Continuous Check report, and Checkr removed the record as result of the dispute.   Second, the "Mismatch Subgroup," consisting of 742[1] individuals about whom Checkr prepared a Continuous Check report where, like Plaintiff, neither the name nor the year of birth of the arrest record included on the report was a character-for-character match to the name and year of birth of the individual who was the subject of the report.

The class settlement was the result of protracted adversarial negotiations, including two lengthy private mediations with the assistance of Hon. Diane Welsh (Ret.) of JAMS on June 17, 2020 and August 27, 2020.  The parties reached a settlement in principle in September 2020, and

---

[1]    The Settlement Administrator determined that 21 members of the Mismatch Subgroup were also listed as members of the Dispute Subgroup.  ECF 75 at ¶ 7. Pursuant to the terms of the Settlement, these individuals are treated only as members of the Dispute Subgroup. ECF 66-1 at ¶ 2.2 (a). ("A Person who would be included in both the Mismatch Subgroup and the Dispute Subgroup shall be deemed to be in the Dispute Subgroup for purposes of the relief and procedures contained herein.").

continued to exchange confirmatory discovery and to negotiate regarding the terms of the settlement including the specific terms of the Consent Order mandating changes to Checkr's practices.  The final settlement agreement was executed on April 14, 2021. ECF 66-1.

### III.   THE PROPOSED SETTLEMENT

The settlement provides substantial relief to the Settlement Class as defined in the Order Directing Notice to the Class.  ECF 73 at ¶ 1.

### A.   Injunctive Relief.

The Settlement Agreement includes Defendant's agreement to the entry of a binding court order requiring that, as a final step in its quality control procedures with respect to reports prepared using the Continuous Check product, a U.S.-based Checkr employee who has been trained in the FCRA's accuracy requirements manually review the report to ensure that there is no mismatch between the personal identifying information provided to Checkr and any of the identifiers provided by any vendor Checkr uses to obtain arrest record information.  *See* 72-1 at Ex. C (Revised Proposed Consent Order).  In the event the manual review reveals a mismatch with any item of personal identifying information, the injunctive relief order prohibits Checkr from including the arrest record on the report without taking appropriate steps to confirm that the record pertains to the consumer before providing the report to the third party, such as contacting the underlying source of the information to obtain additional information.  *Id.*

### B.   Monetary Relief.

The Settlement Agreement further provides for cash payments to Class Members for whom there is confirmed evidence that the arrest record included on the Continuous Check report was inaccurate.  For members of the Dispute Subgroup, this evidence already exists in the form of Defendant's record of the report, and its separate record of the consumer's dispute and Defendant's removal of the disputed record.  For members of the Mismatch Group, that evidence takes the form of Defendant's record of the report, and the consumer's submission of a claim form affirming that the arrest record on the report was inaccurate.  *See* ECF 66-1 at Ex. D (claim form).

59 members of the Mismatch Group submitted a timely and valid claim form.  *See* ECF 75 at ¶ 22.  Therefore, these 59 individuals, along with the 235 members of the Dispute Subgroup whose notices were not returned as undeliverable, are entitled to a *pro rata* share of the Net Settlement Amount provided for in the Settlement Agreement. ECF 66-1 at ¶ 2.4.  Thus, the $463,500.00 making up the Net Settlement Fund will be shared by 294 individuals, who will each receive a payment of $1,575.53. This represents an excellent recovery for class members in an FCRA class action, where even recovery on the merits may fall within the $100-$1,000 statutory range.  15 U.S.C. § 1681n.

## C.    The Costs of Notice and Administration.

The Settlement Agreement provides for payment from the Settlement Fund of the costs of notice and administration of the settlement including compilation and de-duplication of the class lists, mailing and emailing class notice, establishing a website and operating a toll-free number, and the provision of notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.*  *See* ECF 75.  The Settlement Administrator will also be responsible for tax reporting activities and other logistics associated with the substantial payments at issue here. The costs of notice here are justified in light of the substantial benefits provided in the settlement.

## D.    *Cy Pres* Recipient.

The Settlement Agreement precludes any reversion of funds to the Defendant; rather, any amounts paid from the Gross Settlement Amount of $795,000.00, including any checks to Class Members which are uncashed, shall be distributed to Bay Area Legal Aid as *cy pres* recipient.

## E.    Release.

In consideration of the relief provided by the settlement, as detailed in the Agreement, the Class will release all claims that arise out of or relate to the facts alleged or which could have been alleged or asserted in the action under the FCRA.  The release does not apply to non-FCRA related claims.  ECF 66-1 at ¶ 3.1.  The release is broader than the section 1681e(b) claim plead in the Complaint in recognition of the substantial monetary relief available, which is greater than the maximum statutory damages prescribed in the FCRA.  Furthermore, the facts developed in

confirmatory discovery indicate that class members are unlikely to possess other FCRA claims against Checkr.  The release specifically excludes employers and other users of the Continuous Check product, preserving all class members' ability to make claims against such users for any improper use of the reports at issue.  *Id.*, ¶ 1.24.

### F.   Service Award and Attorney's Fees and Expenses.

The Agreement provides that Plaintiff may apply for an individual settlement and service award of $10,000.00 for serving as the Class Representative, and in exchange for the full general release he provides, which is broader than the class release.  *Id.* ¶¶ 3.2, 7.2.  The Agreement permits Class Counsel to apply for an award of $125,000 in attorneys' fees calculated on a lodestar basis in conjunction with their work in obtaining the injunctive relief component of the settlement (*Id.* ¶ 2.4.1(a)), as well as 25% of the Net Settlement Amount, in conjunction with Class Counsel's work in obtaining the monetary components of the settlement.  *Id.* at ¶ 2.4.1(b)(4).  The application for an individual settlement and service award and for attorneys' fees, costs, and expenses of the litigation was filed on August 30, 2021, ten days prior to the deadline for class members to submit objections to the settlement.  ECF 74.  A copy of the application was made available to class members on the settlement website.  No class member has submitted any objection to the requested service award or the proposed amount of attorneys' fees and costs.

### IV.   LEGAL STANDARD

The Ninth Circuit maintains "a strong judicial policy" that favors class action settlements. *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

The approval process for a class action settlement takes place in three stages. See *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (describing the three-stage settlement approval process).  On June 16, 2021, this Court made an initial finding that the Class Settlement is fair, reasonable, and adequate and that the requirements of Rule 23(a) appear to be met; pursuant to this Court's Order, notice was sent to the class.  ECF 73; ECF 75 (Declaration of Settlement Administrator). Thus, the first two stages are complete. The Court now must

determine whether, in light of all the information learned during the first two stages, final approval is warranted. *See Churchill Vill., L.L.C.*, 361 F.3d at 575.

This Court has broad discretion to approve or reject a proposed settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942, 944 (9th Cir. 2015) (noting standard of review is "clear abuse of discretion" and emphasizing appellate court's review is "extremely limited"). When considering a motion for final approval of a class action settlement under Rule 23, a court must determine whether the settlement is "fundamentally fair." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988). A settlement merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61 (2015).

## V.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED.

In its June 16, 2021 Order, this Court found, based on its initial review, that class treatment is appropriate for settlement purposes. ECF 73.  For all the reasons set forth herein, this Court should certify the Settlement Class for purposes of judgment in connection with the Settlement

### A.     The Class Is Sufficiently Numerous

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)).  Classes with as few as twenty-seven members have been found to be sufficient to meet the numerosity requirement."  *McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673-74 (W.D. Wash. 2010) (collecting cases).

Between July 1, 2018, the date when Checkr launched the Continuous Check product, and June 16, 2021, Defendant sold Continuous Check Reports about 247 individuals meeting the definition of the Dispute Subgroup, and an additional 721[2] Continuous Check Reports meeting

---

[2]     As noted in footnote 1 above, this number was reduced from 742 when the Settlement Administrator determined that 21 individuals on the Mismatch Subgroup class list were also

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

the definition of the Mismatch Subgroup.  Together, they make up the class of 968, which is sufficiently numerous for certification purposes.

**B.**   **There are Questions of Law and Fact That Are Common to the Class**

Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law or fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975).

Rule 23 contains two related commonality provisions: Rule 23(a)(2) and Rule 23(b)(3). Rule 23(a)(2) requires that there be "questions of law or fact common to the class," but class certification is not precluded if fewer than all questions of law or fact are common to the class:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon,* 150 F.3d at 1019.  "Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.,* 536 F.3d 975, 978-79 (9th Cir. 2008).

Courts in this Circuit have regularly recognized the existence of commonality in class actions asserting violations of the FCRA's accuracy requirement, both on contest and in the settlement context.  *See Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 417-419 (N.D. Cal. 2014) (finding that FCRA section 1681e(b) claim presented common questions, and certifying class); *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 304-05 (N.D. Cal. 2015) (same); *see also Leo v. AppFolio, Inc.*, No. 3:17-cv-05771-RJB (W.D. Wash.) at ECF 66. (final approval order certifying settlement class).

---

listed on the Dispute Subgroup class list, and thus appropriately treated as only members of the Dispute Subgroup.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Here, all members of the proposed class were subjected to Checkr's standardized procedures for including arrest record information on CC Arrest Reports.

### C.   Plaintiff's Claims Are Typical of the Proposed Class

The typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The typicality test asks "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

Plaintiff Watson's claims are typical of those of the class.  Like all other Class Members, Checkr prepared a CC Arrest Report about Watson using its standardized procedures for attributing arrest record information to individuals.  Like all members of the Mismatch Subgroup, two items of personal identifying information on the arrest record did not match Watson's personal identifiers – for Watson, year of birth and middle name did not match.  And like all members of the Dispute Subgroup, Plaintiff disputed the accuracy of the report to Checkr, which subsequently removed the arrest record.  Like all class members, Plaintiff was the subject of a false communication of harmful criminal record information to his current employer, regarding his fitness for continued employment.  Thus, the typicality requirement is satisfied.

### D.   Plaintiff and His Counsel Will Adequately Represent the Class

Rule 23(a)(4) requires that class representatives, the named plaintiff and his or her counsel, must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Legal adequacy is satisfied if: (1) if there are no antagonistic or conflicting interests between the named plaintiffs and their counsel, and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class." *Hansen v. Ticket Track, Inc.* 213 F.R.D. 412, 415 (W.D. Wash. 2003) (citing *Hanlon*, 150 F.3d at 1020); *see also, Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978).

As set forth in detail in Plaintiff's Motion for an Order Directing Notice to the Class and

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

in the Motion for an Award of Attorneys' Fees, Plaintiff and his counsel have vigorously prosecuted this action on behalf of Settlement Class Members, and no conflicting interests exist. ECF 66 at pp. 6-7, 15-16, 22-23; ECF 74 at pp. 12-16.

### E. The Class Meets the Requirements of Rule 23(b)(3)

#### 1. Common Questions of Law and Fact Predominate

The predominance requirement of Rule 23(b)(3) necessitates that "the common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (internal quotation marks and alterations omitted). Here, the common issues identified above are not just significant – they are the foundational issues in the case.

The superiority requirement of Rule 23(b)(3) is satisfied because individual class members do not have an interest in controlling prosecution of this case, where many of them do not, and cannot know, about potential FCRA claims. Class-wide resolution of these claims, and the provision of the important benefits of the settlement, will provide relief for consumers while promoting efficiency and avoiding the potential of a multiplicity of claims. *See Agne v. Papa John's Int'l., Inc.*, 286 F.R.D. 559, 571 (W.D. Wash. 2012) (discussing superiority and finding that multiplicity of small lawsuits seeking statutory damages was less efficient method of adjudicating claim and finding class action mechanism superior).

For these reasons, and those delineated in Plaintiff's Motion for Order Directing Notice to the Class, this Court should certify this matter as a class action for settlement purposes.

#### 2. A Class Action Is Superior to Other Available Means of Adjudication

Because the claims here are being certified for purposes of settlement, there are no issues with manageability, and resolution of nearly a thousand claims in a single adjudication is superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Particularly in light of Checkr's assertion that an arbitration clause and class action waiver covers the claims in this case, many class members will never be compensated for the

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

violations alleged in this case, and consumers more broadly will not get the benefit of the practice changes provided for in the Agreement.  Accordingly, certification of this class action is favored as the superior method of adjudicating this controversy.

## VI.  THE SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE

In deciding whether to grant final approval to a class action settlement, courts consider several factors, including: (1) the strength of the Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement. *Churchill*, 361 F.3d at 575. All of these factors support settlement approval here.

### A.  The Strength of Plaintiff's Case.

Plaintiff continues to believe that he has a very strong case, but also acknowledges a number of obstacles in the way of achieving a successful result through further litigation.

Plaintiff is confident of his ability to certify a class of consumers on contest for his claims under sections 1681e(b) of the FCRA.  However, Plaintiff is cognizant that before reaching certification issues, he would need to face Defendant's assertion that an arbitration clause and class action waiver apply to his claims.  And even if the arbitration clause did not apply and certification of the class was granted, Plaintiff would need to establish liability on the merits for his claim.  Moreover, Plaintiff anticipates that the issues would center on whether Checkr acted "willfully," affecting the availability of statutory and punitive damages.

The time and expense to try those issues would be considerable. While Plaintiff is confident that he could prove his case, including with respect to willfulness, the risks were significant enough to convince Plaintiff and his counsel that the Class Settlement outweighs the risk and expense of further litigation.

**B.**     **The Risk, Expense, Complexity, and Likely Duration of Further Litigation.**

If this action were to proceed, litigation would likely be both lengthy and expensive. The parties would need to undertake full briefing on the arbitration issue, including potentially arbitration-specific discovery, additional merits discovery, including depositions, and would likely engage in dispositive motion practice.  Furthermore, in the absence of the parties' Class Settlement, the parties would incur very significant expenses in preparing for, and participating in, a trial of this action.

Moreover, the parties would have to delve into the complexity of willfulness issues.  For Plaintiff to obtain statutory or punitive damages for the Class, he would have to prove that Checkr's conduct was willful.  *See Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69 (2007) (willfulness standard is not met "unless the action is not only a violation [of the FCRA] under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.").  The time and expense to investigate those issues would not be inconsiderable.

Finally, it could be expected that Defendant would appeal any decisions in Plaintiff's favor, including seeking review of any class certification decision under Fed. R. Civ. P. 23(f). Such appeals would ensure that Settlement Class Members would not receive any relief for years. There is a significant advantage to receiving a benefit now as opposed to later. *See Officers for Justice v. Civil Service Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

**C.**     **The Risk of Maintaining Class Action Status through Trial.**

Class certification always poses a risk and often involves a prolonged and expensive battle of experts in connection with certification, merits, and damages issues.  If Plaintiff was unable to certify a class, the case would effectively be over, and Class Members would receive nothing.  Although the Court was not asked to consider a contested class certification motion, had the case not settled, Defendants would have vigorously disputed that certification of the class was appropriate in this case.  Although Plaintiff believes he would have been successful in

seeking to certify a class, Defendant likely would have argued that certification is not appropriate under Rule 23.  For example, Defendants would have argued that the Class is not ascertainable or that Plaintiff would not be able to demonstrate damages.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S. Ct. 2541, 2552 (2011) (requiring "rigorous analysis" to ensure requirements of "Rule 23(a) have been satisfied"); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (same).

### D.   The Amount Offered in Settlement.

The Settlement Agreement requires Checkr to pay over $1,500 to each Class Member for whom there is confirmation that the arrest record Checkr reported was inaccurate.  This payment is substantial in light of the $100-$1,000 statutory range for willful violations.  15 U.S.C. § 1681n. It also compares favorably to the results achieved in other class action settlements of FCRA accuracy claims.  *See, e.g. Patel v. Trans Union, LLC*, No. 3:14-cv-0522-LB (N.D. Cal.) at ECF 159 p. 6 ($1,100 payments for successful claimants); *Leo v. AppFolio, Inc,* No. 3:17-cv-05771-RJB (W.D. Wash.) at ECF 62 p. 7 ($425 for successful claimants).

Furthermore, all Class Members and individuals who may be subject to a Continuous Check report in the future will substantially benefit from the Class Settlement because of the important practice changes mandated by the Consent Order achieved as a result of the Settlement.

### E.   The Extent of Discovery Completed and the Stage of Proceedings.

Courts consider the extent of discovery completed and the stage of the proceedings in determining whether a class action settlement is fair, adequate and reasonable. *Shames v. Hertz Corp.,* No. 07 CV-2174, 2012 WL 5392159, at *6 (S.D. Cal. Nov 5, 2012). This case settled only after the parties had engaged in a substantial exchange of information that revealed the potential strengths and weaknesses of Plaintiff's case and the viability of class certification.  Though the parties ultimately reached a resolution, they did so notwithstanding reaching an impasse at two separate formal mediation sessions and only after continued settlement discussions after the mediation and with continued additional assistance from the mediator.  After settlement was

reached, the parties' engaged in a confirmatory discovery process to verify the information exchanged informally.

**F.      The Experience and Views of Counsel.**

Where Class Counsel is qualified and well informed, their opinion that a settlement is fair, reasonable, and adequate is entitled to significant weight. *See Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 543 (W.D. Wash. 2009).  Here, counsel for Plaintiff are highly experienced class action litigators. ECF 66 at p. 15, 22-23; ECF 74-1 at Ex. A.  Plaintiff agreed to settle only because the Class Settlement provides an excellent result for Class Members by ensuring the recovery of compensation without the need to submit a claim and ensuring fundamental practice changes that serve to benefit all prospective employees to Defendant.  Class Counsel believe the proposed settlement is fair, reasonable, adequate, and in the best interest of the Classes. As such, the experience of counsel supports final approval.

**G.      The Presence of a Governmental Participant.**

Consistent with the Settlement Agreement, the Settlement Administrator provided the required CAFA notice to the attorneys general of 50 states, as well as the U.S. territories and the District of Columbia's Corporate Counsel. ECF 75 at ¶¶ 3-4. Not a single government entity has objected to the settlement or sought to intervene. Thus, this factor weighs in favor of settlement approval. *See Garner v. State Farm Auto Ins. Co*., No. CV 08 1365 CW (EMC), 2010 WL 1687832, *14 (N.D. Cal. Apr. 22, 2010).

**H.      The Reaction of Settlement Class Members.**

The reaction of Class Members to the Class Settlement has been universally positive, with no objections and no opt-outs, which supports final approval. *See Pelletz*, 255 F.R.D. at 543-44; *Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, at *8 (N.D. Cal. Apr. 25, 2016) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043) (observing "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

## VII.   SETTLEMENT CLASS MEMBERS RECEIVED THE BEST NOTICE PRACTICABLE

In directing notice to Settlement Class Members, this Court determined that the proposed notice program in this case "fully satisfies the requirements of Fed. R. Civ. P. 23 and due process, constitutes the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto."  ECF 73 at ¶ 6. This notice program was fully implemented by the Settlement Administrator, JND.   *See* ECF 75.

The class notice and notice process approved by this Court and implemented by the Settlement Administrator adequately informed Class Members of the nature of the action and these proceedings, the terms of the proposed settlement, the effect of the action and release of these claims, the right to exclude themselves from the action, and their right to object to the proposed settlement, as required for final approval of a class settlement under Federal Rule of Civil Procedure 23 and in compliance with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).

The notice program successfully reached Settlement Class Members.   Notice via electronic mail reached approximately 94% of Class Members, and hard copy notice via U.S. mail reached approximately 84% of the Settlement Class Members. ECF 75 at ¶¶ 7-11.

## VIII.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval of the parties' Class Settlement as fair, reasonable, and adequate, certify the proposed Class for settlement purposes, approve the proposed *cy pres* recipient and enter final judgment in this case.

RESPECTFULLY SUBMITTED AND DATED this 11th day of October, 2021.

By: */s/ Erika Angelos Heath*
Erika Angelos Heath (SBN 304683)
FRANCIS MAILMAN SOUMILAS, P.C.
369 Pine Street, Suite 410
San Francisco, CA 94104
Tel: (628) 246-1352
Fax: (215) 940-8000
eheath@consumerlawfirm.com

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

James A. Francis*
John Soumilas*
Lauren KW Brennan*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: (215) 735-8600
F: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

*Admitted *pro hac vice*

*Attorneys for Plaintiff
and the Settlement Class*

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT